628 So.2d 1164 (1993)
Cynthia A. WILSON, Plaintiff-Appellant,
v.
STATE of Louisiana, DHHR, Defendant-Appellee.
No. 93-323.
Court of Appeal of Louisiana, Third Circuit.
December 8, 1993.
John William Pickett, Many, for Cynthia A. Wilson.
Brian D. Cespiva, Alexandria, for State of La. DHHR.
Before GUIDRY, KNOLL and SAUNDERS, JJ.
KNOLL, Judge.
Cynthia A. Wilson appeals the dismissal of her intentional tort action against her employer, State of Louisiana, DHHR (DHHR), on an exception of no cause of action. She further appeals the trial court's rejection of her worker's compensation claim against DHHR for disability based on mental injuries *1165 she received when a prisoner at Camp Beauregard stabbed her in the neck multiple times with a screwdriver.
In the intentional tort claim, the trial court granted DHHR's peremptory exception of no cause of action prior to trial on the merits, finding that Wilson's exclusive remedy against her employer was in worker's compensation. After a trial on the merits in the worker's compensation claim, the trial court concluded that Wilson failed to prove by a preponderance of the evidence that there was a causal relationship between her mental injury and the work-related accident. We reverse and render.
Wilson contends that the trial court erred in: (1) granting DHHR's peremptory exception of no cause of action which dismissed her strict liability claim against DHHR; and, (2) misinterpreting the facts with regard to her proof of causation between her mental injury and the work-related accident.

FACTS
On July 21, 1985, Wilson was the front gate officer and visiting officer on duty at the Work Training Facility North, Camp Beauregard. In the course and scope of her employment she was attacked by an inmate and received multiple stab wounds in the neck with a screwdriver. Immediately after the attack, Wilson underwent neck surgery at Rapides General Hospital where she remained hospitalized for several days.
As part of her treatment, Wilson also had psychiatric counseling from Dr. W.D. Goodin which began on July 26, 1985. She remained hospitalized for psychiatric care an additional four days. It is undisputed that Wilson reached maximum cure and resolution of her physical injuries during 1986. However, Wilson continued under Dr. Goodin's psychiatric care through September 17, 1992.
DHHR paid worker's compensation benefits in varying amounts to Wilson until it terminated payment completely on August 23, 1990.

PEREMPTORY EXCEPTION OF NO CAUSE OF ACTION
Wilson first contends that the trial court erroneously dismissed her second amending petition against DHHR which asserted a claim in strict liability. She argues that DHHR was vicariously liable for the intentional tort committed by its prisoner; thus, it fell under the intentional tort exclusion found in LSA-R.S. 23:1032. We disagree.
We have reviewed the trial court's written reasons for judgment on this issue and adopt it as our own. The learned trial court stated:
"The defendant employer [DHHR] filed this exception of no cause of action when the plaintiff amended her petition to allege Civil Code Article 2317 strict liability on the part of the State for the intentional act of the inmate. The State relies upon the general rule that the employee's sole remedy against her employer for injuries arising out of the course and scope of her employment is in worker's compensation. LSA-R.S. 23:1031 and 1032.
The case of Reeder v. LAKS Corp., 555 So.2d 7 (La.App. 1st Cir.1989), [writ denied, 559 So.2d 142 (La.1990)], is analogous to this case. The 1st Circuit said:
`The plaintiffs argue that the employer should be liable for the intentional acts of the patient because the employer was responsible for the patient who was in its care. The plaintiffs' asserted cause of action is primarily based on the strict liability afforded by LSA-C.C. art. 2317 and the legal obligations plaintiffs argue are imposed by that article on the caretaker, Laks. This court in Hebert stated that a "`dual capacity'" argument, which would allow the employee to receive worker's compensation from his employer and to file a suit in tort against the same employer in another capacity, is not valid. Hebert [v. Gulf States Utilities Co.], 369 So.2d [1104] at 1107. "`Even if the doctrine were viable in Louisiana, the allegations of fault against the [employer] are really failure to furnish employee a safe place to work'" Hebert, 369 So.2d at 1107. The same is true in this suit. The allegations of fault against Laks are really negligent supervision and failure to provide a safe *1166 work place. Recovery for an accident that occurred because of unsafe working conditions is limited to worker's compensation. LSA-R.S. 23:1032; Reeder at 10.'
The State exercised the same type of control over the attacking inmate as the nursing care facility in Reeder exercised over its patient. The intentional act exception to the exclusive remedy rule is not applicable. Therefore, the exception of no cause of action is sustained."

CAUSATION FOR MENTAL INJURY
Wilson next contends the trial court was manifestly erroneous in its conclusion that she failed to prove by a preponderance of the evidence that the work-related accident caused her mental injury.
Louisiana jurisprudence has firmly established the legal principle that disabling mental conditions causally related to an employment accident are compensable under the worker's compensation scheme. Miles v. Dolese Concrete Co., 518 So.2d 999 (La.1988). A disabling mental condition must be proven by a preponderance of evidence. Dominick v. CNA Ins. Co., 497 So.2d 758 (La.App. 3rd Cir.1986), writ denied, 501 So.2d 231 (La. 1987). "Such a condition must not only be shown to exist but also it must be shown that the condition was causally related to a work related accident." Jordan v. Southern Natural Gas Co., 455 So.2d 1217 (La.App. 2nd Cir.1984). Causation is not necessarily and exclusively a medical conclusion. It is usually the ultimate fact to be found by the trial court, based on all the credible evidence. Haughton v. Fireman's Fund Am. Ins. Co., 355 So.2d 927 (La.1978). Generally, the trial court's factual findings are entitled to great weight and will not be disturbed on appellate review absent manifest error. Dominick, supra.
In the case sub judice, the trial court stated in its written reasons for judgment:
"Mrs. Wilson showed that after the accident, she required treatment for anxiety, depression, and post traumatic stress syndrome. Dr. Goodin, who has treated her since shortly after the accident, said that `This traumatic event has had far reaching emotional impact on this individual with marked anxiety and depression.' In addition, he stated that an [sic] one point, he was `just trying to keep from getting to where she has to go in a hospital' because of her depression.
Also, it was Dr. Goodin's opinion as of September, 1992, that Mrs. Wilson was physically and emotionally not employable. Essentially, she has not found employment since the accident in 1985.
Mrs. Wilson apparently had increasing symptoms of major depression before the accident but had still been a productive employee.
On the other hand, defendant presented facts which cause the Court to seriously question whether Mrs. Wilson met her burden of proving causation. For example, Mrs. Wilson has not always taken her anti-depressant medicine as directed. Dr. Goodin states that for a period in 1988 when she did take the medicine as directed, `the symptoms were no longer present'.
Since 1990, more serious physical problems, unrelated to the accident, have begun to affect Mrs. Wilson. Dr. Goodin stated that her emotional condition has become more serious as her physical condition has worsened. Dr. Goodin believes that, until that time, she could haveand should havereturned to work.
More importantly, Dr. Goodin continually tried to get Mrs. Wilson to find some type of work outside the home. An expert in vocational rehabilitation worked closely with her in order to help her do so. However, she never made any attempt to find work. She never made any phone calls or sent a single resume, even after the rehabilitation expert performed job market surveys.
In his deposition of November 14, 1991, Dr. Goodin indicated that, due to her lack of cooperation, Mrs. Wilson herself is the cause of her current situation.

*1167 After carefully reviewing all the evidence, including the testimony and depositions, the Court finds that Mrs. Wilson failed to overcome her burden of proof. At best, the evidence shows EQUALLY PLAUSIBLE explanations for her injuries."
Notwithstanding the trial court's well considered determination, we find that the trial court was manifestly erroneous in its conclusion on the issue of causation.
It cannot be gainsaid that as shown by the record, Mrs. Wilson did not always take her anti-depressant medication as Dr. Goodin prescribed and that she was beset with physical problems which have worsened as she aged. As stated by Dr. Goodin, the taking of the medication relieved the symptoms of depression; however, there was no testimony that the failure to take the medication caused Mrs. Wilson's depression. Likewise, Mrs. Wilson did not deny that the placement of her parents into a nursing home before the accident depressed her.
The record further preponderates that it is only since Mrs. Wilson has had the mental problems associated with her stab wounds in the neck that she has been unable to control her diabetes, her primary physical health problem. Prior to her work-related accident, there is no showing in the record that Mrs. Wilson's problems with diabetes or any depression associated with the placement of her parents in a nursing home made her unable to function in her job with DHHR. Addressing a question directed to Mrs. Wilson's employability in his deposition of September 17, 1992, Dr. Goodin stated:
"At this time, with the depression still existing, she is taking her antidepressant more regularly. Her diabetes is uncontrolled and remains fairly much out of control. She has developed from the diabetes neuropathies and paresthesias in her lower extremities. Physically and emotionally I don't think she is employable at this point. But it is notit is a combination. The mind and body are all connected, and the stresses she has been through I am sure contributed to some of the physical deterioration, because that is the way it works."
Despite her physical disabilities which have further manifested themselves through the years, the common thread of causation which runs throughout is the mental injury which Mrs. Wilson received when she was stabbed.
The record is replete with instances where Dr. Goodin recommended that Mrs. Wilson find employment. Nevertheless, the record also shows that Dr. Goodin never released Mrs. Wilson from his care. Paraphrasing Dr. Goodin, he felt that employment would benefit Mrs. Wilson's treatment by making her refocus her attention away from her stabbing. Dr. Goodin testified that her one attempt at a return to work at the prison made her regress because DHHR placed her in the same guard post where she was when she was stabbed. Thus, viewing Dr. Goodin's work recommendation, it cannot be said that he found that Mrs. Wilson's mental health problem was cured; rather, it is clear that Dr. Goodin's recommendations were basically that his encouragement to return to work was purely for therapeutic reasons.
Thus, after carefully reviewing the record, we find that the evidence preponderates that Mrs. Wilson's mental injury was caused by her work-related injury, and the trial court was manifestly erroneous in concluding otherwise.
With regard to the extent of Mrs. Wilson's disability, we find Dr. Goodin's testimony unrefuted that as of the time of trial Mrs. Wilson was unemployable. Accordingly, we find that Mrs. Wilson is entitled to worker's compensation benefits for temporary total disability.
For the foregoing reasons, the judgment of the trial court dismissing Cynthia Wilson's claim for an intentional tort is affirmed, and the judgment denying her worker's compensation benefits is reversed and set aside.
IT IS ORDERED, ADJUDGED, AND DECREED that there be judgment in favor of Cynthia Wilson and against the State of Louisiana, Through the Department of *1168 Health and Human Resources, Camp Beauregard Prison, finding her temporarily totally disabled and entitled to the sum of $229.86 (662/3% of her average weekly wage of $344.80) from the date of DHHR's last payment, August 23, 1990, continuing during the period of such disability, together with medical benefits for her treatment, and legal interest, until paid.
Costs of the trial court and this appeal are assessed to DHHR.
AFFIRMED IN PART, REVERSED IN PART AND RENDERED.