BROWN, Chief Judge,
dissents.
| ^though decedent was injured in a clearly identifiable accident occurring within the course and scope of her employment, plaintiffs, the husband and children of decedent, filed a tort action for wrongful death. Plaintiffs asked for a jury trial. Plaintiffs filed a motion for partial summary judgment on the question of liability. Defendant, Shady Lake Nursing Home Inc. (“Shady Lake”), also filed a motion for summary judgment. The facts were virtually undisputed. The issue argued in both *617 motions was whether plaintiffs’ sole and exclusive remedy was under the Louisiana Workers’ Compensation Act (“LWCA”). Without resolving the workers’ compensation coverage question, the trial court denied both motions.
On September 19, 2007, Elizabeth Caldwell-Lloyd was working at Shady Lake Nursing Home as a certified nursing assistant when, at approximately 2:45 a.m., she was physically attacked by a patient, William DiMaggio. Immediately after being struck by DiMaggio, Mrs. Caldwell-Lloyd began having difficulty breathing and her blood pressure increased dramatically. She was then taken to East Carroll Parish Hospital and was pronounced dead at 8:56 a.m. — approximately one hour after being struck by DiMaggio.
In their presentation and argument to the trial court on the summary judgment motion, plaintiffs asserted the intentional act exclusion. The, trial court questioned, but did not decide, whether this issue should be determined by a jury. The trial court ruled that the mens rea of DiMaggio | adid not transfer to Shady Lake for the purpose of establishing an intentional act and that the argument that Shady Lake was “substantially certain” that such an assault by DiMaggio on Mrs. Caldwell-Lloyd would occur was “thin” and “a stretch.” Even so, the trial court denied both parties’ motions for summary judgment.

The Exclusivity Rule of Workers’ Compensation

Except for intentional acts, the rights and remedies afforded by the LWCA provide the exclusive means of redressing work place injuries. La. R.S. 23:1032. The LWCA represents a compromise in which the employer is responsible to pay legislatively fixed benefits regardless of fault. In exchange for accepting no fault responsibility, the employer is guaranteed immunity from lawsuits for tort damages arising out of the employment relationship, except for intentional torts. Thomas v. State Department of Transportation and Development, 27,203 (La.App.2d Cir.10/12/95), 662 So.2d 788, writ denied, 97-0745 (La.05/01/97), 693 So.2d 736. This compromise is the core of the workers’ compensation scheme. “The power to enact a Workmen’s Compensation Law reposes in the law-making body of the state. The amount of compensation, to whom due and payable, the limitations and restrictions within which it may be demanded, peculiarly address themselves to the lawmaking power....” Haynes v. Loffland Bros. Co., 215 La. 280, 40 So.2d 243, 291 (1949).
La. R.S. 23:1032 A(l)(a) provides in part:
Except for intentional acts provided for in Subsection B, the rights and remedies herein granted to an employee or his dependent on account of an injury, or compensable sickness or disease for which he is entitled to compensation under this | ..¡Chapter, shall be exclusive of all other rights, remedies, and claims for damages.... (Emphasis added.)

Intentional Acts Exception

Plaintiffs’ presentation to this court, as well as the majority opinion, appears to have abandoned the intentional act argument or at least “sent it back down to the minor leagues.”
Tort immunity for the employer does not apply when the employee’s injuries are the result of an intentional act. La. R.S. 23:1032(B). The LWCA, however, was not intended to make the employer liable for the intentional acts of third parties who are not listed in the statute and not employees of the company. See Reeder v. Laks Corp., 555 So.2d 7 (La.App. 1st Cir.1989), writ denied, 559 So.2d 142 (La. *618 1990). In Reeder, supra, the plaintiff was employed at a nursing care facility and was attacked by a mental patient of the facility. The appellate court rejected the plaintiffs argument that the facility was liable for the actions of the patient, holding that the allegations of fault against the defendant were “really negligent supervision and failure to provide a safe work place.” Id. at 10.
Plaintiffs argue that Shady Lake committed an intentional act by admitting DiMaggio to Shady Lake and failing to provide proper security and training for its employees. In order for an act to be intentional, the person who acts must either consciously desire the physical injury, whatever the likelihood of such a result happening, or know that the injury is substantially certain to follow from his conduct. Thus, intent has reference to a desire to cause physical injury. White v. Monsanto Co., 585 So.2d 1205 (La.1991).
|4Recovery for an accident that occurred because of unsafe working conditions is limited to workers’ compensation. Reeder, supra. See also Wilson v. State, Dept. of Health and Human Resources, 628 So.2d 1164 (La.App. 3d Cir.1993) (held that workers’ compensation was the exclusive remedy of a prison official who was intentionally stabbed by a prisoner).
In the present case, the facts are undisputed. No one at Shady Lake desired to afflict any injury or harm upon Mrs. Caldwell-Lloyd, a 20-year employee. Plaintiffs alleged numerous acts that they claim were intentional, but none meets the substantial certainty test for an intentional act. It was undisputed that DiMaggio, though exhibiting some outbursts, had never attacked a nurse or other patient prior to or after coming to Shady Lake. Further, DiMaggio’s treating physician, prior to DiMaggio’s arrival at Shady Lake, reported that his condition had improved since he started a new medication regimen and that his outbursts were very infrequent. DiMaggio was cleared for admission after an examination by Shady Lake medical personnel. It was not substantially certain or inevitable that DiMaggio would suddenly and violently attack Mrs. Caldwell-Lloyd, causing her death. At best, the danger was foreseeable but not substantially certain. Therefore, the intentional act exception does not apply.

Compensability of Heart-Related or Perivascular Injuries

Plaintiffs’ primary argument, which was adopted in the majority opinion, relates to a heightened burden of proof of causation. In O’Regan v. Preferred Enterprises, Inc., 98-1602 (La.03/17/00), 758 So.2d 124, the Louisiana Supreme Court allowed the plaintiff to proceed with a tort claim [ ^against her employer after she had been denied benefits by the WCJ and the court of appeal. O’Regan was employed at a laundry service where she was exposed to certain chemicals that she claimed led her to develop myelodysplasia. Under the LWCA, O’Regan’s illness was presumed to be non-occupational because she had been working at her job for less than 12 months and she was required to overcome the presumption by an overwhelming preponderance of evidence.[6] The supreme court noted that the Act itself presumed that the claim was not covered. If the claim is not covered under the Act, then there is no compensation remedy and a tort claim can be filed. O’Regan, supra.
*619 In the present case, plaintiffs have asserted a wrongful death claim. Plaintiffs do not contend that there is no coverage under the compensation act but only that they cannot prove causation due to the heightened burden of proof (by clear and convincing evidence) required for heart-related and perivascular injuries as defined in La. R.S. 23:1021(8)(e).
The supreme court in O’Regan, supra, cautioned that a conceptual distinction must be made between injuries which do not come within the Act’s coverage provisions and injuries which are covered but for which no compensation is payable. The O'Regan court explained that its discussion of the case was based “solely upon the statutory presumption placing the employee outside of the Act.” Id. at 133. Further, the supreme court listed the statute governing heart-related and perivascu-lar injuries as an example | fiof a legislatively crafted higher burden of proof without a non-occupational presumption.
In the present case, plaintiffs filed suit in the civil district court, eschewing any attempt to pursue a remedy in workers’ compensation. In this case, the statute does not invoke a non-occupational presumption as was the case in O’Regan, supra.
If an employee receives a personal injury by an accident arising out of and in the course of her employment, the employer is required to pay compensation benefits. La. R.S. 23:1031(A); Gooden v. B E & K Construction, 33,457 (La.App.2d Cir.06/23/00), 764 So.2d 1206. An accident is defined by La. R.S. 23:1021(1) as follows:
[A]n unexpected or unforeseen actual, identifiable, precipitous event happening suddenly or violently, with or without human fault, and directly producing at the time objective findings of an injury which is more than simply a gradual deterioration or progressive degeneration.
There is no dispute that when the attack occurred, Mrs. Caldwell-Lloyd was at work as a certified nursing assistant at Shady Lake Nursing Home. In the course of her work, she directed DiMaggio to return to his room. He then proceeded to physically attack her without warning. This was an accident, that is, an identifiable, physical event which directly produced at that time actual injury, a busted jaw, difficulty in breathing and elevated blood pressure. Within one hour Mrs. Caldwell-Lloyd was dead.
In Wilson, supra at 1167, Justice Knoll, then a judge on the Third Circuit and writing for the court, stated that “[djespite her physical disabilities which have further manifested themselves through the years, the | 7common thread of causation which runs throughout is the mental injury which Mrs. Wilson received when she was stabbed [by a prisoner].”
Whether by a preponderance or clear and convincing evidence the common thread of causation of Mrs. Caldwell-Lloyd’s heart/perivascular-related death is the beating she received arising out of and within the course and scope of her employment.
An employer takes a worker as he finds her, and a worker who is more susceptible to injury is entitled to no less protection under the LWCA than a healthy one. Harvey v. B E & K Construction, 30,825 (La.App.2d Cir.08/19/98), 716 So.2d 514. Plaintiffs point out that Mrs. Caldwell-Lloyd suffered from obesity, high blood pressure, and an enlarged heart. However, the pathologist testified that the battery was a precipitating event in the final common pathway. Courts have defined precipitate as “to cause to happen before expected.” Debona v. Pawn, 94-430 (La. *620 App. 3d Cir.11/02/94), 649 So.2d 449, writ denied, 94-2878 (La.01/27/95), 650 So.2d 242. There is no evidence in the record to support the premise that Mrs. Caldwell-Lloyd’s underlying heart disease suddenly and contemporaneously progressed in its own natural course to the point of a coronary event. The decedent was punched in the face and then immediately began having difficulty breathing and chest pains. She was pronounced dead less than one hour later. The close proximity of the coronary event and the altercation with DiMaggio supports the conclusion that Mrs. Caldwell-Lloyd did not just happen to have a heart attack while performing her job.
|8Based on the foregoing reasons, I would reverse the decision of the trial court and grant the motion for summary judgment filed by defendant, Shady Lake Nursing Home, Inc.

. There are only three types of burdens of proof — by a preponderance of the evidence, by clear and convincing evidence, and beyond a reasonable doubt. The word "overwhelming” is superfluous. See Justice Lemmon’s concurrence in the first O’Regan case, 737 So.2d at 37.