DIXON, Justice.*
On January 27, 1978 the state attorney general’s office served investigative demands upon Malcolm W. Humphreys, the operator of two Arthur Murray Dance Studios located in New Orleans. The demands were issued pursuant to R.S. 51:1411A of the Unfair Trade Practice and Consumer Protection Law which provides:
“When the attorney general and director have evidence that a person has engaged in or is engaged in any method, act, or practice declared to be unlawful by this chapter and they believe it to be in the public interest that an investigation should be made to ascertain whether a person in fact has engaged in or is engaging in any act or practice declared to be unlawful, the attorney general and director may execute in writing and cause to be served upon any person who is believed to have information, documentary material or physical evidence relevant to the alleged or suspected violation, an investigative demand. Such investigative demand shall contain a description of the unlawful method, act or practice under investigation, and shall require such person to furnish, under oath or otherwise, a report in writing setting forth the relevant facts and circumstances of which he has knowledge, or to produce relevant documentary material or physical evidence for examination, at such reasonable time and place as may be stated in the investigative demand, concerning the advertisement, sale or offering for sale of any goods or services or the conduct of *CLXX any trade or commerce that is the subject matter of the investigation.”
The demands alleged that the attorney general had “evidence and information that false, deceptive, and misleading representations may have been made to students and prospective students . . and the demands went on to outline several alleged business practices of Humphreys that might constitute violations of R.S. 51:1405, et seq. Humphreys was, accordingly, ordered to produce names and last known addresses of the following: (1) all students enrolled in each studio for the period October 1,1975 to October 1, 1977; (2) all dance instructors who worked for each studio for the period October 1, 1974 to October 1, 1977; (3) all party clubs within the studios and/or franchise that students may join or in which students may participate.
Thereafter, Mr. Humphreys petitioned for a protective order pursuant to R.S. 51:1411B[1] alleging that the investigative demands were defective because the state failed to allege such probable cause as is implicitly required by the United States and Louisiana Constitutions. Following a hearing, the trial court issued a protective order setting aside the state’s investigative demands and held that the state had failed to set forth sufficient probable cause to outweigh Humphreys’ constitutionally guaranteed right of privacy, as well as the right of privacy of those persons whose names would be on the lists sought by the state.
The Court of Appeal reversed the judgment of the district court and dissolved and set aside the protective order holding that the allegations of the investigative demands complied with the statutory requirements for issuance, disagreeing with the district court’s application of the probable cause test. 369 So.2d 250 (La.App.1979). Writs were granted on application of the plaintiff to determine whether the state’s investigative demands sufficiently complied with the requirements of R.S. 51:1411A.
The state’s investigative demands did not sufficiently comply with the requirements of R.S. 15:1411A. The statute requires that the state have evidence of unlawful activity before an investigative demand is authorized; it does not permit an investigative demand to be issued on the assertion that the state has information that false, deceptive, and misleading representations may have been made to students. Furthermore, the demand alleged that the business practices of Mr. Humphreys may constitute activity declared unlawful under R.S. 14:1405, et seq. The allegations set forth in the demands were very general statements: nowhere was a specific incident or victim named. The attorney general claims that he has evidence that “false, deceptive, and misleading representations may have been made to students in” six listed situations.[2] The statute spe *CLXXI cifically necessitates as a prerequisite for the issuance of an investigative demand that the state must “have evidence that a person has engaged in or is engaged in any method, act, or practice declared to be unlawful.”
Mr. Humphreys followed the statutory procedure established by R.S. 51:1411B to contest the validity of the investigative demands by filing a verified petition for a protective order. The state filed an answer and exceptions to Humphreys’ petition, but, in effect, only repeated the content of the “investigative demands.”
The Court of Appeal relied on Commonwealth of Kentucky ex rel. Hancock v. Pineur, 533 S.W.2d 527 (Ky.1976); United States v. Morton Salt Co., 388 U.S. 632, 70 S.Ct. 357, 94 L.Ed. 401 (1950) and See v. City of Seattle, 387 U.S. 541, 87 S.Ct. 1737, 18 L.Ed.2d 943 (1967) in reversing the trial court.
See v. City of Seattle, supra, does not support defendants. That case actually held that Fourth Amendment warrant requirements, suitably interpreted according to the public need for the regulation involved, are applicable to an administrative entry without consent, upon portions of commercial property not open to the public. The defendant’s conviction for refusing entry to a fire inspector was reversed because the inspector had not obtained a warrant. If at all applicable, See v. City of Seattle supports Humphreys’ position that the “investigative demands” must show, at least, probable cause for the investigation.
United States v. Morton Salt Co., supra, referred to a governmental investigation into corporate matters. The court held that the Federal Trade Commission had the power to require a corporation to file reports showing how they have complied with a court decree enforcing the commission’s cease and desist order. This case can be only remotely related to the one before us.
Commonwealth of Kentucky ex rel. Hancock v. Pineur, supra, did hold that the attorney general in a proceeding like this one was not required to make a showing of “reasonable grounds” for his demand on the face of the papers. There are slight differences in the Kentucky statute and ours; but the main difference in the Kentucky decision and ours seems to be that the Kentucky court approvingly compared the investigative power of the attorney general to a grand jury proceeding. Neither the Louisiana Constitution (Art. 4, § 8)[3] nor the statute [4] contemplate such sweeping investigatory powers.
*CLXXII At least at this stage, the matter of Humphreys, Arthur Murray, and the attorney general and the director of the consumer protection agency is not a criminal case, but a civil matter, which would more appropriately be governed by standards of pleading in civil cases. Since the “investigative demand” is not a subpoena, but the commencement, so to speak, of the action against Humphreys, it ought to show on its face that the statute requirements have been met before a private person is compelled to expose his otherwise private affairs and business records to the attorney general. The demand should state, not that the attorney general may have evidence of violations, but that he has such evidence. This is the minimal and fundamental requirement which the attorney general chooses not to meet. (His reluctance to state that he has evidence appears genuine; the statement in the demand was not, apparently, an inadvertence). The demand should be as specific and as factual as a petition in a civil suit, alleging, not the evidence, but the “material facts” on which it is based. C.C.P. 891.
Since the “investigative demand” is lacking in such “material facts,” the judgment of the Court of Appeal is reversed, and the judgment of the district court granting plaintiff’s protective order is reinstated.
SUMMERS, C. J., concurs.

 Chief Judge Paul B. Landry, Retired, is sitting by assignment as Associate Justice Ad Hoc in place of Tate, J.

. R.S. 51:1411B provides:
“At any time before the return date specified in the investigative demand, or within twenty days after the demand has been served, whichever is shorter, a petition stating good cause for a protective order to extend the return date, or to modify or set aside the demand, may be filed in the district court having civil jurisdiction in the parish where the person served with the demand resides or is domiciled or has his principal place of business.”

. “(1) the awarding of ‘free’ dance lessons without disclosing that additional dance lessons or instructions would be sold or offered for sale immediately prior to, immediately after or during the ‘free dance instruction or class; (quote not closed in original)
(2)advising students to take dance instructions or lessons by offering evaluations purportedly based on the students’ skills and ability, when, in fact all students are given the same results regardless of dancing ability, aptiude (sic) or proficiency;
(3) use of relay salesmanship involving successive efforts by a number of salesmen and/or instructors who subject students to intense, emotional and unrelenting sales practices and techniques to induce their consent to long term contracts, all without affording students reasonable opportunity to consider and comprehend the scope and extend (sic) of the obligations imposed thereunder;
(4) permitting and/or encourging (sic) dance salesmen and/or instructors to utilize their relationship to foster student investments in the dance studio;
(5) inducing students to take trips to participate in alleged competitive dancing when in fact students are required to bear the expense of instructor accompaniment and are awarded *CLXXI competitive dance prizes regardless of skill or aptitude.
(6) inducing students to join dance ‘clubs’ engaged in organized social axrivities (sic) for exhibiting dancing skills and aptitude when in fact the primary purpose is to sell additional dance instructions.”

. “There shall be a Department of Justice, headed by the attorney general, who shall be the chief legal officer of the state. The attorney general shall be elected for a term of four years at the state general election. The assistant attorneys general shall be appointed by the attorney general to serve at his pleasure.
As necessary for the assertion or protection of any right or interest of the state, the attorney general shall have authority (1) to institute, prosecute, or intervene in any civil action or proceeding; (2) upon the written request of a district attorney, to advise and assist in the prosecution of any criminal case; and (3) for cause, when authorized by the court which would have original jurisdiction and subject to judicial review, (a) to institute, prosecute, or intervene in any criminal action or proceeding, or (b) to supersede any attorney representing the state in any civil or criminal action.
The attorney general shall exercise other powers and perform other duties authorized by this constitution or by law.” Art. 4, § 8, La. Const, of 1974.

. “Upon written motion of the attorney general or district attorney setting forth reasonable grounds therefor, the court may order the clerk to issue subpoenas directed to the persons named in the motion, ordering them to appear at a time and place designated in the order for questioning by the attorney general or district attorney respectively, concerning any offense under investigation by him. The court may also order the issuance of a subpoena duces tecum.
The contumacious failure or refusal of the person subpoenaed to appear is punishable as a contempt of court.
The attorney general or district attorney, respectively, may determine who shall be present during the examination and may order all persons excluded, except counsel for the person subpoenaed.” C.Cr.P. 66.