790 So.2d 673 (2001)
STATE of Louisiana ex rel. Richard P. IEYOUB
v.
RACETRAC PETROLEUM, INC. et al.
No. 01-0458.
Court of Appeal of Louisiana, Third Circuit.
June 20, 2001.
*675 R. Kent Dupre, Agent for Rainbow Marketers, Inc., Lafayette, LA, Counsel for: Rainbow Marketers, Inc.
Steven Gerald Durio, Durio, McGoffin & Stagg, Lafayette, LA, Jerald R. Harper, Glenn Louis Langley, Cook, Yancey, King & Galloway, Shreveport, LA, Robert Louis Broussard, Durio, McGoffin, & Stagg, Lafayette, LA, Nicole Montagnet Smith, Cook, Yancey, King & Galloway, Shreveport, LA, Counsel for: Racetrac Petroleum, Inc.
John F. McDermott, Taylor, Porter, Brooks & Phillips, L.L.P., Baton Rouge, LA, Counsel for: Lard Oil Company, Inc.
Joseph Nicholas Mole, Frilot, Partridge, Kohnke & Clements, New Orleans, LA, Counsel for: Murphy Oil USA, Inc.
Arthur Falls Schafer, Assistant Attorney General, Lafayette, LA, Counsel for: State of Louisiana ex rel. Richard P. Ieyoub.
John David Ziober, Kennon, Odom, etc., Baton Rouge, LA, Counsel for: Cracker Barrel Stores, Inc.
Richard G. Barham, Barham & Warner, Shreveport, LA, Counsel for: Brookshire Grocery Company.
Theodore Glenn Edwards IV, Attorney at Law, Lafayette, LA, Counsel for: Macro Oil Company, Inc.
Lamont Paul Domingue, Voorhies & Labbe, Lafayette, LA, Michael R. Phillips, Frilot, Partridge, Kohnke & Clements, L.C., New Orleans, LA, Counsel for: Murphy Oil USA, Inc.
Jane Anne Bishop Johnson, Assistant Attorney General, Baton Rouge, LA, *676 Counsel for: State of Louisiana ex rel. Richard P. Ieyoub.
Brian A. Cowan, Cook, Yancy, King & Galloway, Shreveport, LA, Counsel for: Racetrac Petroleum, Inc., Super One Foods, Brookshire Grocery Company, Sporty's, Pumpelly Oil, Inc., Speedway § Gate Food Stores, Marathon Oil Company, Circle K Stores, Tosco Corporation.
Agent for Service Prentice-Hall Corporation, Agent for Chevron, Inc., New Orleans, LA, Counsel for: Chevron USA, Inc.
Agent C.T. Corporation System, Agent for Service, Baton Rouge, LA, Counsel for: Diamond Shamrock Refining and Marketing Company, Tosco Corporation, Bayou Food Stores, Inc., Marathon Oil Company.
Court composed of ULYSSES GENE THIBODEAUX, JOHN D. SAUNDERS, and MICHAEL G. SULLIVAN, Judges.
SAUNDERS, Judge.

FACTS
On October 4, 1999, the Attorney General, on behalf of the State, filed a Petition for Injunctive Relief against twenty-two defendants, including Racetrac Petroleum, Inc. (Racetrac) and Murphy Oil, USA, Inc. (Murphy). The petition asserted that the Defendants were wholesalers or retailers engaged in the retail sale of gasoline and other petroleum products below cost as defined in the Louisiana Unfair Sales Act at La.R.S. 51:421, et seq. As relief for these violations, the Attorney General sought injunctive relief against "any violation, damage or threatened loss or injury pursuant to La.R.S. 51:1407 and La.R.S. 51:1414."
On May 4, 2000, the Attorney General filed its Petition Amended to Include Enforcement of Additional Complaints, Fines and Damages (the amended petition), naming only Racetrac as Defendant to the additional claims asserted therein. In the amended petition, the Attorney General asserted additional claims against Racetrac, alleging that it had violated the Louisiana False Advertising Law at La.R.S. 51:411, the Louisiana Unfair Sales Law at La. R.S. 51:421, et seq., and the Louisiana Unfair Trade Laws at La.R.S. 51:1401, et seq.
Later, in an attempt to eliminate the vagueness of his earlier petitions, the Attorney filed its second Petition Amended to Include Enforcement of Additional Complaints, Fines and Damages (second amended petition). In this petition, the only Defendants named were Racetrac and Murphy. The Attorney General alleged that both Racetrac and Murphy had violated La.R.S. 51:122, La.R.S. 51:123, La.R.S. 51:125(C)(2), La.R.S. 51:133, La.R.S. 51:142, et seq. and La.R.S. 51:1405.
On January 9, 2001, Murphy and Racetrac responded to the amended petition by filing numerous motions and exceptions.
Then, on March 12, 2001, the trial judge held a hearing on the motions and exceptions filed by Racetrac and Murphy. The trial judge signed its judgment concerning each motion and exception filed on March 30, 2001. From this judgment, the Attorney General took an expedited appeal pursuant to La.R.S. 51:134. Racetrac then filed an answer to the appeal.

LAW AND ANALYSIS

ASSIGNMENTS OF ERROR BY ATTORNEY GENERAL
On appeal the Attorney General makes the following assignments of error:
1. The trial judge erred in sustaining the Defendants' peremptory exceptions *677 of no cause of action pursuant to La.R.S. 51:122 and La.R.S. 51:123.
2. The trial judge erred in not denying outright the Defendants' exceptions of no right of action and lack of procedural capacity pursuant to La.R.S. 51:122 and La.R.S. 51:123.
3. The trial judge erred in dismissing the Attorney General's action pursuant to La.R.S. 13:5081 and refusing to enforce the statute.
4. The trial judge erred in dismissing the Attorney General's action pursuant to La.R.S. 51:1411.
5. The trial judge erred in denying the police power of the State in the face of the Defendants' vague allegations of the unconstitutionality of La.R.S. 13:5081.
6. The trial judge erred in sustaining Murphy's exception of improper cumulation of actions and in dismissing the Attorney General's La.R.S. 51:123 claims against the Defendants.
7. The trial judge erred in granting the Defendants' motions to compel discovery pursuant to La.Code Civ.P. art. 1442.
8. The trial judge erred in not holding outright that federal antitrust law does not preempt Louisiana antitrust law.

ANSWER TO APPEAL BY RACETRAC
In response to the Attorney General's appeal, Racetrac filed an answer to appeal on April 30, 2001, asserting the following assignments of error:
1. The trial judge erred in denying Racetrac's peremptory exception of no right of action for damages and lack of procedural capacity with respect to the State's claim for damages under the Unfair Trade Practices Act, the Unfair Sales Act, and the Price Discrimination Act.
2. The trial judge erred in denying Racetrac's motion to deem facts confessed.
3. The trial judge erred in denying Racetrac's peremptory exception of res judicata based upon the judgment of the First Judicial District Court of Caddo Parish, Case No. 444165-A.

NO CAUSE OF ACTION
In his first assignment of error, the Attorney General asserts that the trial judge erred in sustaining the Defendants' peremptory exceptions of no cause of action pursuant to the antimonopoly and antitrust statutes located at La.R.S. 51:122 and La.R.S. 51:123.[1] A peremptory exception of no cause of action presents a question of law, which we review de novo, applying the same standard as that applied by the trial court. Craft v. Allstate Ins. Co., 95-160 (La.App. 3 Cir. 8/30/95); 663 So.2d 116, writ denied, 95-2403 (La.12/15/95); 664 So.2d 454. The exception tests the legal sufficiency of the petition, and is triable on the face of the papers. City of New Orleans v. Board of Dirs. of La. State Museum, 98-1170 (La.3/2/99); 739 So.2d 748. No evidence is admissible in support of or in opposition to the exception. Leatherman v. East Baton Rouge Parish, 275 So.2d 806 (La.App. 1 Cir.1972). To withstand the exception, the petition must set forth the material *678 facts upon which the cause of action is based. Kahn v. Jones, 95-259 (La.App. 3 Cir. 11/2/95); 664 So.2d 700. A petition which simply sets forth factual conclusions without supplying facts to support those conclusions is insufficient. Id.
Generally, if a petition states a cause of action as to any ground or portion of a plaintiffs demand, a trial court must deny an exception of no cause of action. Ward v. Tenneco Oil Co., 564 So.2d 814 (La.App. 3 Cir.1990). However, our jurisprudence has recognized an exception to this rule where separate and distinct causes of action are brought under one petition. Id.; See Everything on Wheels Subaru, Inc. v. Subaru South, Inc., 616 So.2d 1234 (La.1993).

La.R.S. 51:122
La.R.S. 51:122 provides, "[e]very contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce in this state is illegal." To state a cause of action under La.R.S. 51:122, "the plaintiff is required to allege that the defendant is a party to a contract which results in an unreasonable restraint of trade." Jefferson v. Chevron U.S.A., Inc., 97-2436, p. 6 (La.App. 4 Cir. 5/20/98); 713 So.2d 785, 789, writ denied, 98-1681 (La.10/16/98); 727 So.2d 441 (citing Reppond v. City of Denham Springs, 572 So.2d 224 (La.App. 1 Cir.1990)).
The Attorney General filed three petitions in the instant matter, one original petition and two amending petitions. After the second amended petition, Murphy filed an exception of vagueness which the trial court sustained. The trial court ordered the Attorney General to cure the vagueness problem. As a result, the Attorney General filed a second amended petition.
Considering the facts alleged in all three petitions, the Attorney General did not provide facts sufficient to support his claim that Racetrac and Murphy violated La.R.S. 51:122. While the Attorney General did make conclusory statements of fact, alleging violations of La.R.S. 51:122, he did not state sufficient facts to support those conclusions. "Louisiana is a fact pleading state under the Louisiana Code of Civil Procedure." Ellis v. Normal Life of La., 93-1009, p. 8 (La.App. 5 Cir. 5/31/94); 638 So.2d 422, 427; See La.Code Civ.P. art. 862. A plaintiff does not have to set forth every possible theory of recovery, but he must set forth the facts of his claim. See Ellis, 638 So.2d 422. Although we must construe pleadings to achieve substantial justice, to reach the truth, and to avoid the application of harsh, technical rules of pleading; at a minimum, the plaintiff must plead bare bone facts, which if taken as true, state a cause of action. See Id. Accordingly, because we find that the Attorney General did not plead even bare bone facts to support his allegations under La.R.S. 51:121, we find this argument without merit.

La.R.S. 51:123
La.R.S. 51:123 provides, "No person shall monopolize, or attempt to monopolize, or combine, or conspire with any other person to monopolize any part of the trade or commerce within this state." To state a cause of action under this statute, the plaintiff must show that a defendant either (1) monopolized, (2) attempted to monopolize, or (3) conspired to monopolize any part of the trade or commerce within this state. See Jefferson, 713 So.2d 785. Monopoly power is the ability to control prices or to exclude competition from the relevant market. Id. To establish a cause of action under La.R.S. 51:123, the pleadings must state facts sufficient to show that the Defendants possessed monopoly *679 power in a clearly defined economic and geographic market and had the general purpose or intent to exercise or maintain that power. Louisiana Power & Light Co. v. United Gas Pipe Line Co., 478 So.2d 1240 (La.App. 4 Cir.1985), affirmed in part, reversed in part, 493 So.2d 1149 (La. 1986).
The Defendants argue that the Attorney General failed to plead any facts to define the relevant market in which they allegedly exercised their market power. In addition, the Defendants argue that the Attorney General failed to allege the monopolypower market share held by the Defendants, and failed to allege any illicit acts on the part of the Defendants to retain such power and market share.
Failure to define the market in which the monopoly is allegedly exercised is fatal to a monopolization claim. Jefferson, 713 So.2d 785. The "relevant market" in antitrust cases is the "market which is relevant in the area of effective competition within which the defendant operates" and has two elements: product and geography. Louisiana Power & Light Co., 478 So.2d 1240, 1248 (La.App. 4 Cir.1985), affirmed in part, reversed in part, 493 So.2d 1149 (La.1986). For the product element, "the relevant market consists of those goods which are reasonably interchangeable for the purposes for which they are produced, taking into account price, use and quality." Id. The geographic element consists of the "area in which sellers of the defendant's product operate, and to which buyers can practicably turn to obtain that product." Id.
The Defendants urge that the pleadings fail to allege the existence of the relevant product and geographic markets. In support of this argument, the Defendants point to the pleadings which define the relevant product market as regular unleaded gasoline, as both wholesale and retail gasoline, and as simply undefined wholesale and retail prices. Because of this, the Defendants urge that the Attorney General's pleadings neither allege a proper product market nor attempt to show that it "consists of those goods which are reasonably interchangeable for the purpose for which they are produced, taking into account, price, use and quality." Id.
In addition, the Defendants argue that the Attorney General did not allege the geographic boundaries and extent of the market within which Defendants are alleged to be possessed with monopoly power. Specifically, Racetrac notes that in his various petitions, the Attorney General has alleged that Racetrac's unlawful conduct was alleged to have occurred "in various parts of the State," "in the Covington area," "the Covington market area," "in the Lafayette area," and in "different localities in the State." Likewise, Murphy argues that the Attorney General's allegations that it acted in the "Lafayette market" and that it damaged an unnamed competitor in Covington, Louisiana are insufficient.
Additionally, the Defendants argue that the Attorney General failed to allege any facts concerning the Defendants' respective market shares, in order to show that they possessed the ability to control prices or exclude competition from the market. To plead a violation of La. R.S. 51:123 necessarily involves showing that the Defendants had power to control prices or to exclude competition from the relevant market. See Jefferson, 713 So.2d 785.
In the instant case, the Attorney General made no factual allegations which suggest that the Defendants possessed the ability to control prices or exclude competition from the market as required to prove a cause of action under La.R.S. *680 51:123. In evaluating the Defendants' exceptions of no cause of action, the trial judge stated, "the most indulgent reading... of the State's petition does not reveal a cause of action for antitrust or monopolization." After reviewing de novo the trial record, we find that the trial court did not err in granting the Defendant's exception of no cause of action with respect to La. R.S. 51:123. Accordingly, we find this assignment of error without merit.

NO RIGHT OF ACTION/LACK OF PROCEDURAL CAPACITY
In his second assignment of error, the Attorney General asserts that the trial judge erred in finding that the Defendants' exceptions of no right of action and lack of procedural capacity under La.R.S. 51:122 and La.R.S. 51:123 were moot. The trial judge found these exceptions to be moot because he found that the Attorney General had not stated a cause of action under La.R.S. 51:122 or La.R.S. 51:123. Because we find that the trial judge did not err in sustaining the Defendants' exceptions of no cause of action under La.R.S. 51:122 and La.R.S. 51:123, we do not find it necessary to address the merits of this assignment of error.

La.R.S. 13:5081
The Attorney General's third and fifth assignments of error involve the same issue, and we will address these assignments together. Essentially, the Attorney General urges that the trial judge erred in dismissing his action pursuant to La.R.S. 13:5081 and in denying the police power of the State. In support of this assignment, the Attorney General urges that such a ruling is a violation of express constitutional law, specifically La. Const. art. IV § 8.[2] The Attorney General also urges that such a ruling goes against the express, mandatory terms of the statute itself. The applicable part of La.R.S. 13:5081 provides:
The Attorney General, or any district attorney, acting under the direction of the former, or of the governor, shall begin any action to enforce the laws respecting monopolies, combinations or conspiracies in restraint of trade, commerce or business. The prosecuting officer either in preparation for or upon the trial of the case may take testimony of any officer, director, agent or employee of any foreign or domestic corporation, joint stock association, or of any member of any copartnership, or of any individual or individuals against whom proceedings are brought. If the person or persons whose testimony is desired, resides within or outside the state, the prosecuting officer shall file in court where the action is brought, at any time, or with any special commissioner appointed in accordance with R.S. 13:5085 by the court to take testimony, a written statement setting forth the following:
(1) What the state expects to prove;
(2) The name or names and residences of the persons whose testimony he desires to take;
(3) All books, papers or documents specifically designated he desires produced;
(4) The time and place, either within or outside the state he desires the person *681 to appear and testify, or to produce the books, papers and documents.
Little jurisprudence exists concerning the interpretation of La.R.S. 13:5081. The primary case concerning the construction of this statute is State ex rel. Ieyoub v. Brunswick Bowling and Billiards Dover, Inc., 95-797 (La.App. 5 Cir. 11/15/95); 665 So.2d 520, writ denied, 95-3018 (La. 2/16/96); 667 So.2d 1053, writs denied, 95-3018 (La.2/16/96); 667 So.2d 1053. In that instance, the Attorney General had brought suit against Brunswick Bowling and Billards Dover, Inc. under La.R.S. 51:121, et seq. and La.R.S. 51:1401, et seq. After the suit was instituted, the Attorney General moved to take testimony from the defendants under La.R.S. 13:5081. After a hearing on the motion, the trial court issued an order that La. Code Civ.P. art. 1420 through 1474 would govern the discovery in the case rather than La.R.S. 13:5081. In doing so, the trial court reasoned that discovery under La.R.S. 13:5081 was "burdensome and archaic". Brunswick Bowling, 665 So.2d at 522.
On appeal, the fifth circuit found that the trial court had committed legal error. The court concluded that although seldom used, La.R.S. 13:5081 remained in effect and provided the Attorney General with alternative methods of discovery to those located in the Louisiana Code of Civil Procedure. Id. The court noted, however, that this statute's discovery provisions are only available "to enforce the laws respecting monopolies, combinations, or conspiracies in restraint of trade, commerce or business." Id.
Title 51 of the Louisiana Revised Statutes contains our law involving trade and commerce. Although the Attorney General asserts that the Defendants have violated a number of these laws, the only laws in this title concerning "monopolies, combinations, or conspiracies in restraint of trade, commerce or business" are those contained in Part IV of the title.[3] La. R.S. 13:5081.
In the instant case, the Defendants argue that the trial court did not err in prohibiting the Attorney General from using the specialized procedures under La. R.S. 13:5081 because of the trial judge's determination that the Attorney General stated no cause of action under La.R.S. 51:122, et seq. We agree. La.R.S. 13:5081 clearly limits its applicability to the actions concerning monopolies, combinations, or conspiracies. As no actions concerning monopolies, combinations, or conspiracies remain to be resolved in the instant suit, La.R.S. 13:5081 is clearly inapplicable. Accordingly, we find this assignment of error without merit.

La.R.S. 51:1411
In his fourth assignment of error, the Attorney General asserts that the trial judge erred in dismissing the State's action pursuant to La.R.S. 51:1411. Under La.R.S. 51:1411:
A. When the attorney general and director have evidence that a person has engaged in or is engaged in any method, act, or practice declared to be unlawful by this chapter and they believe it to be in the public interest that an investigation should be made to ascertain whether a person in fact has engaged in or is engaging in any act or practice declared to be unlawful, the attorney general and director may execute in writing and cause to be served upon any person who is believed to have information, documentary *682 material or physical evidence relevant to the alleged or suspected violation, an investigative demand. Such investigative demand shall contain a description of the unlawful method, act or practice under investigation, and shall require such person to furnish, under oath or otherwise, a report in writing setting forth the relevant facts and circumstances of which he has knowledge, or to produce relevant documentary material or physical evidence for examination, at such reasonable time and place as may be stated in the investigative demand, concerning the advertisement, sale or offering for sale of any goods or services or the conduct of any trade or commerce that is the subject matter of the investigation.
B. At any time before the return date specified in the investigative demand, or within twenty days after the demand has been served, whichever is shorter, a petition stating good cause for a protective order to extend the return date, or to modify or set aside the demand, may be filed in the district court having civil jurisdiction in the parish where the person served with the demand resides or is domiciled or has his principal place of business.
C. If no protective order from the court is secured and the written request by the attorney general and director is not complied with by the return date thereof, the attorney general and director may apply to the court for an order compelling compliance with the demand under R.S. 51:1413.
The Attorney General argues that the powers provided to him in this statute may be used as a discovery device during the pre-trial phase of the case, citing State ex rel. Ieyoub v. Classic Soft Trim, Inc., 96-1041 (La.App. 5 Cir. 1/15/97); 688 So.2d 105, writ denied, 97-0402 (La.3/27/97); 692 So.2d 397.
Classic Soft Trim, Inc. involved an antitrust and unfair trade practices suit brought by the Attorney General against Classic Soft Trim, Inc. The focus on appeal was the trial court's grant of a preliminary injunction in favor of the defendants. The injunction prohibited the State from issuing investigative demands or conducting discovery without giving notice to the defendants. The primary issue to be resolved was whether the Attorney General was required under La.R.S. 51:1401 to provide notice to defendants of investigative demands served on non-parties to the suit.
In opposition to the Attorney General's appeal, the defendants argued that he could not use an investigative demand to circumvent the notice requirements for discovery under the Louisiana Code of Civil Procedure. Id. In support of their argument, the defendants referred to La. R.S. 51:1415 which provided that service of demands, subpoenas, and petitions under the unfair trade practices act had to be made pursuant to the Code of Civil Procedure.
The fifth circuit concluded that such notice was not required under La.R.S. 51:1401. In doing so, the court noted that the investigative demand provided for under La.R.S. 51:1411 was "a unique device available only in an unfair trade practices action." Classic Soft Trim, Inc., 688 So.2d at 107. Quoting from Brunswick Bowling, 665 So.2d at 522, the court recognized:
"Louisiana's antitrust and unfair trade practices laws are sui generis statutes regulating monopolies and restraints of trade or commerce in this state. (citation omitted). Certain specialized procedures are embodied in these sui generis statutes." The investigative demand authorized by La. R.S. 51:1411 is just such a specialized procedure, and the trial *683 court committed error by granting a preliminary injunction imposing on the Attorney General a notice requirement for discovery not established by that statute.
Classic Soft Trim, Inc., 688 So.2d at 108.
The main issue in Classic Soft Trim, Inc. was not whether investigative demands may be used as a pre-trial discovery device against parties, but whether notice to parties was needed to use such demands against non-parties once suit had been instituted. Accordingly, we do not find Classic Soft Trim, Inc. helpful in resolving the issues at hand.
Aside from Classic Soft Trim, Inc., scarce jurisprudence exists as to the applicability of La.R.S. 51:1411. Although Humphreys v. State ex rel. Guste, 377 So.2d 88 (La.1979), does not deal directly with the issue at hand, it is instructive.
In Humphreys, the Attorney General's office served investigative demands on two Arthur Murray Dance Studios located in New Orleans. Mr. Humphreys opposed the investigative order, petitioning for a protective order pursuant to La.R.S. 51:1411(B). The trial court granted the order, finding that the Attorney General had failed to assert probable cause sufficient to outweigh Humphreys' right to privacy. On appeal, the court set aside the protective order issued by the trial court holding that the allegations of the investigative demands complied with the statutory requirements for issuance.
On review by the Louisiana Supreme Court, it found that the investigative demands "did not sufficiently comply with the requirements of R.S. 51:1411A." Humphreys, 377 So.2d at 90. The court found that the demand's allegations were "very general statements: nowhere was a specific incident or victim named." Id. The court found these general statements inadequate in light of the statute's specific requirement that the Attorney General "have evidence that a person has engaged in or is engaged in any method, act, or practice to be declared unlawful." Id. Finally, the court noted:
At least at this stage, the matter of Humphreys, Arthur Murray, and the attorney general and the director of the consumer protection agency is not a criminal case, but a civil matter, which would more appropriately be governed by standards of pleading in civil cases. Since the "investigative demand" is not a subpoena, but the commencement, so to speak, of the action against Humphreys, it ought to show on its face that the statute requirements have been met before a private person is compelled to expose his otherwise private affairs and business records to the attorney general. The demand should state, not that the attorney general May have evidence of violations, but that he Has such evidence. This is the minimal and fundamental requirement which the attorney general chooses not to meet.... The demand should be as specific and as factual as a petition in a civil suit, alleging, not the evidence, but the "material facts" on which it is based. C.C.P. 891.
Id. at 92.
In the instant case, the Defendants urge that the procedures available to the Attorney General under La.R.S. 51:1411 may only be used prior to the initiation of a regular civil proceeding. The Defendants urge that when La.R.S. 51:1411 uses the term "investigation," the term refers to a pre-petition inquiry which may be necessary to uncover evidence tending to establish that an unfair trade practice may have occurred.[4] The Defendants contend that *684 such procedures are unnecessary once the lawsuit has been filed because the Code of Civil Procedure provides for comprehensive discovery in civil cases. Therefore, the Defendants urge that the trial court did not err in prohibiting the Attorney General from proceeding under La.R.S. 51:1411.[5]
Because La.R.S. 51:1411 was not written in a vacuum, we must consider its application in reference to other procedures available in the Louisiana Code of Civil Procedure. See La.Civ.Code art. 13. As we read the statute, La.R.S. 51:1411 provides the Attorney General pre-suit investigative techniques not available under the Code of Civil Procedure. However, we do not find that the procedures allowed for in this statute are available to the Attorney General once he has chosen to file suit against the persons investigated. Our conclusion is buttressed by the Louisiana Supreme Court's treatment of the investigative demand at issue in Humphreys as well as the language of the statute itself. Therefore, we find that the trial judge did not err in holding that the Attorney General must comply with the rules of the Louisiana Code of Civil Procedure rather than the provisions of La.R.S. 51:1411. Accordingly, we do not find that the trial judge erred in determining that the discovery at trial should proceed under the Code of Civil Procedure.

EXCEPTION OF IMPROPER CUMULATION
In his sixth assignment of error, the Attorney General argues that the trial judge erred in sustaining Murphy's exception of improper cumulation of actions and in dismissing the Attorney General's La. R.S. 51:123 claims against the Defendants. The Attorney General makes little attempt to support this assignment of error. His brief simply says that:
For the reasons set forth above, R.S. 13:5081 and R.S. 51:1411 are discovery devices which the Attorney General may use in the enforcement of both the antitrust and unfair trade laws. Intellectual honesty and the law demand reversal of this improper sustaining of defendant's exception of improper cumulation of actions pursuant to the authorities used by the Attorney General in this brief.
Because the Attorney General does not cite the record or put forth any legal argument as to why this assignment of error may be meritorious, we decline to review this assignment of error under Uniform Rule 12-12.4 of the Courts of Appeal.

MOTIONS TO COMPEL
In his seventh assignment of error, the Attorney General urges that the trial court erred in granting Racetrac's and Murphy's motions to compel discovery. Specifically, the Attorney General argues that the Defendants' motions to compel should not have been granted because they failed to present any evidence of the relevancy of their discovery requests. The Attorney General views discovery in this case as one-sided. He asserts that "no fact is in contention other than that required by the relevant statutes pleaded by the Attorney General, proof of which is to be found in the records of the defendants.... Defendants have been granted no constitutional, statutory or jurisprudential authority to investigate the *685 Office of the Attorney General without pleading wrong doing under an appropriate theory of law."
The Attorney General also outlines what he believes is the only evidence relevant to this case:
The statutes provide the only matters of evidence which have relevance to this case as follows:
For violations of R.S. 51:421, the relevant proof is:
1. Invoices
2. Proof of freight charges
3. Proof of cartage charges (freight)
4. Mark up of 6% after all of the above figures have been added together.
For violations of R.S. 51:331, the relevant proof is:
1. Proof of sales at different prices in different cities in Louisiana.
Therefore, only documentary evidence as stated above is relevant. No interrogatories or depositions responded to by any employee of the Attorney General's Office or any other office of the State of Louisiana can change one shred of documentary evidence necessary for proof of any fact which is in contention in this matter as demonstrated by the pleadings.
Accordingly, the Attorney General asserts that the discovery sought by the Defendants is totally irrelevant to the issues in the case.
The scope of discovery in a civil case is broad. Generally, a party "may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action." La.Code Civ.P. art. 1422. Discovery should be allowed where such discovery "relates to the claim or defense of the party seeking discovery or to the claim or defense of any other party, including the existence, description, nature, custody, condition, and location of any books, documents, or other tangible things and the identity and location of persons having knowledge of any discoverable matter." Id. Even if the information sought will be inadmissible at the trial, the information will be discoverable if it "appears reasonably calculated to lead to the discovery of admissible evidence." Id.
Furthermore, the courts must liberally and broadly construe discovery statutes to achieve their intended objectives. Testa Distributing Co., Inc. v. Tarver, 584 So.2d 300 (La.App. 1 Cir.1991). These objectives include:
(1) to afford all parties a fair opportunity to obtain facts pertinent to the litigation, (2) to discover the true facts and compel disclosure of these facts wherever they may be found, (3) to assist litigants in preparing their cases for trial, (4) to narrow and clarify the basic issues between the parties, and (5) to facilitate and expedite the legal process by encouraging settlement or abandonment of less than meritorious claims. Hodges v. Southern Farm Bureau Casualty Insurance Company, 433 So.2d 125 (La.1983); Cantrelle Fence and Supply Co., Inc. v. Allstate Insurance Company, 550 So.2d 1306 (La.App. 1st Cir.1989), writ denied, 559 So.2d 123 (La.1990).
Id. at 307.
A party seeking to compel discovery bears the burden of proving that the matters sought to be discovered are relevant. Id. In determining whether to compel discovery, the trial judge has vast discretion. Id.
A review of the record shows that the Defendants only sought to compel discovery after the Attorney General repeatedly failed to respond to the Defendants' interrogatories, requests for production *686 of documents, and requests for depositions under La.Code Civ.P. art. 1442.[6] When asked to explain why the Attorney General objected to the Defendants' discovery requests, the Attorney General responded, "[w]ell, what's objectionable is everyhe's asking for every shred of evidence that we have against Racetrac [and Murphy]. We don't have, you know, all of their discovery."
Our review shows us that the interrogatories, request for production of documents, and request for depositions shows that the Defendants' discovery requests were relevant to the case at hand. While the Attorney General objects to this discovery because it feels that discovery in this matter is limited to only the materials necessary to prove its case, that assertion is inaccurate. Materials are relevant if they will aid in the defense of an action even if they are inadmissible in trial. See La.Code Civ.P. art. 1422. The Defendants are entitled to materials which are relevant to their defense. Therefore, we do not find that the trial judge erred in issuing an order compelling the Attorney General to respond to the Defendants' discovery requests. Accordingly, we find this assignment of error without merit.

PREEMPTION
In his final assignment of error, the Attorney General asserts that the trial court erred in not holding outright that federal antitrust law does not preempt Louisiana antitrust law. At trial, the judge did not rule on the Defendants' exceptions regarding the preemption of federal law because it found that the issues were moot. The trial judge found that the issues were moot because he found that the Attorney General had not stated a cause of action under La.R.S. 51:122 and La.R.S. 51:123. Because we have found that the trial court did not err in that finding, we find that the trial court did not err in failing to address the Defendants' exceptions of preemption. Therefore, we find this assignment unnecessary to address on appeal, and we find this assignment of error without merit.

RACETRAC'S ANSWER TO APPEAL
Racetrac filed an answer to the Attorney General's appeal on April 30, 2001, fourteen days after the appellate record was lodged with this court. In its answer, Racetrac asserted three assignments of error:
1. The trial judge erred in denying Racetrac's peremptory exception of no right of action for damages and lack of procedural capacity with respect to the State's claim for damages under the Unfair Trade Practices Act, the Unfair Sales Act, and the Price Discrimination Act.
2. The trial judge erred in denying Racetrac's motion to deem facts confessed.
3. The trial judge erred in denying Racetrac's peremptory exception of res judicata based upon the judgment of the First Judicial District Court of Caddo Parish, Case No. 444165-A.
*687 The Attorney General challenges the timeliness of this answer arguing that the appeal was untimely under either La. R.S. 51:134 or La.R.S. 51:135. Therefore, we must address the timeliness of the answer before reaching its merits.
La.R.S. 51:134 provides, in pertinent part:
In all cases under this Part the defendant shall file all exceptions in limine litis, or if necessary in the alternative, after the usual delays, and any additional delays as the court may allow; however, a plea to the jurisdiction is not waived by other pleas or exceptions filed. The judge shall take up such exceptions in preference over all other business and shall decide all questions raised in the exceptions within ten days after submission, and his ruling shall have the effect of res judicata, unless the party cast shall appeal within five days.
(Emphasis added.) In addition, La.R.S. 51:135 provides:
All interlocutory judgments in the cases affected by this Part, and not otherwise provided for, shall be appealable within five days and shall be heard and determined within twenty days after appeal is lodged, and any interlocutory judgments not appealed, except those rendered during the progress of the trial, shall be final, and shall not be reopened on final appeal. Such appeals shall be on the original papers, on the order of the district judge, if a transcript cannot be prepared in time.
(Emphasis added.)
La.R.S. 51:135 confers appellate jurisdiction only where antitrust actions are at issue. Jefferson, 713 So.2d 785. Because La.R.S. 51:134 is contained in the same Part dealing with monopolies and antitrust laws, it should be interpreted in the same manner. Therefore, in order for the special provisions of La.R.S. 51:134 or La.R.S. 51:135 to apply, there must necessarily be a controversy at issue under La.R.S. 51:122, et seq. In the instant case, the Attorney General's causes of action under the antitrust provisions have been dismissed; therefore, the special statutes contained at La.R.S. 51:134 and La.R.S. 51:135 should not apply, as they deal only with antitrust claims.
The applicable statute in this instance is La.Code Civ.P. art. 2133(A), which provides, an appellee may file an answer if he seeks to have the judgment of the trial court "modified, revised, or reversed in part" or if "he demands damages against the appellant." This answer must be filed within "fifteen days after the return day or the lodging of the record whichever is later." Id. Although we find Racetrac's answer timely, we will not consider the issues raised by the answer because they do not arise from final judgments.
An answer is the equivalent to an appeal on the part of the appellee. La.Code Civ.P. art. 2133. Generally, appeals may be taken only from final judgments or from interlocutory judgments which may cause irreparable injury. See La.Code Civ.P. art.2083. In its appellate brief, Racetrac acknowledges that "some or all of the rulings it complains of may be characterized as interlocutory in nature, and not subject to appeal." Despite this acknowledgment, Racetrac urges that "this Court can, in its discretion, hear a non-appealable issue raised in conjunction with appealable issues to serve the interests of judicial economy and justice. Martin v. Martin, 95-0466 (La.App. 4 Cir. 10/26/95); 663 So.2d 519, writ denied, 95-2806 (La.1/29/96); 666 So.2d 682; Masson v. Champion Ins. Co., 591 So.2d 399 (La.App. 4 Cir.1991)."
*688 Upon review of the record, it is apparent that none of the three issues sought to be addressed by Racetrac in its answer stem from final judgments.[7] Further, Racetrac makes no claim that these interlocutory judgments are such that they cause irreparable injury. Although Racetrac urges us to consider its answer in the interest of judicial economy and justice, we decline to do so.

DECREE
Considering the foregoing discussion, we affirm the decision of the trial court. All costs of appeal are assessed against the State.
AFFIRMED.
NOTES
[1] Under Uniform Rule 12-12.4 of the Courts of Appeal, an appellant's brief must "include a suitable reference by volume and page to the place in the record containing the basis for the alleged error. The court may disregard the argument on that error in the event suitable reference to the record is not made." The Attorney General failed to reference the portion of the record to which he refers in his assignments of error. Despite the Attorney General's failure to adhere to Rule 12-12.4, in our discretion, we have chosen to review the assignments made on appeal.
[2] The applicable part of La. Const. art. IV § 8 provides:

As necessary for the assertion or protection of any right or interest of the state, the attorney general shall have authority (1) to institute, prosecute, or intervene in any civil action or proceeding; (2) upon the written request of a district attorney, to advise and assist in the prosecution of any criminal case; and (3) for cause, when authorized by the court which would have original jurisdiction and subject to judicial review, (a) to institute, prosecute, or intervene in any criminal action or proceeding, or (b) to supersede any attorney representing the state in any civil or criminal action.
[3] The complete title is Part IV. Monopolies. The statutes contained in this part are La.R.S. 51:121 to La.R.S. 51:152.
[4] The special procedural devices provided for in statutes following La.R.S. 51:1411 are also couched in terms of investigation, rather than in terms of discovery.
[5] In its judgment, the trial court stated "[t]he State having elected to proceed with this matter as a civil action for damages and injunctive relief, it is ordered that all future discovery in this matter by all parties shall be governed by the Louisiana Code of Civil Procedure and not by any form of Civil Investigative Demand."
[6] La.Code Civ.P. art. 1442 provides:

A party may in his notice name as the deponent a public or private corporation or a partnership or association or governmental agency and designate with reasonable particularity the matters on which examination is requested. The organization so named shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which he will testify. The persons so designated shall testify as to matters known or reasonably available to the organization. This Article does not preclude taking a deposition by any other procedure authorized in this Chapter.
[7] Duplechin v. Toce, 434 So.2d 648 (La.App. 3 Cir.1983)(a judgment which overrules an exception is an interlocutory judgment); Mauterer v. Tillery, 328 So.2d 755 (La.App. 1 Cir. 1976), writ denied, 365 So.2d 245 (La.1978) (a judgment denying an exception of no right of action is an interlocutory judgment.)