638 So.2d 422 (1994)
Sanders ELLIS, et al.
v.
NORMAL LIFE OF LOUISIANA, et al.
No. 93-CA-1009.
Court of Appeal of Louisiana, Fifth Circuit.
May 31, 1994.
*423 Timothy Thriffiley, Chalmette, for plaintiffs/appellants Sanders Ellis, Individually and as Natural Tutor of the Minor Child, Terrence Joseph Ellis.
Lynn L. Lightfoot, New Orleans, for defendant/appellee Normal Life of Louisiana, Inc.
Before GAUDIN, DUFRESNE and CANNELLA, JJ.
CANNELLA, Judge.
Plaintiff, Sanders Ellis, individually and as natural tutor of his minor child, Terrence Ellis, appeals from a summary judgment which dismissed his suit for the wrongful death of his wife, Sarah Ellis. She died from a heart attack while at work for defendant, Normal Life of Louisiana (Normal Life). We reverse the summary judgment and remand.
Sarah Ellis was employed by Normal Life for several years as a home staff worker. On April 14, 1991 she died of a heart attack while working the 11:00 pm to 9:00 am shift at the Nel Court home in Gretna, Louisiana. The home is a group or community residence for six retarded adults, most of whom also have behavioral problems. Normal Life, a private corporation, operates other similar homes in Jefferson Parish pursuant to state and federal laws and regulations.
On March 6, 1992, plaintiff sued Normal Life and its insurer, alleging that the intentional acts of Normal Life in under-staffing the home on the weekends during the 11:00 pm to 9:00 am shift caused or contributed to the death. He contended that Normal Life knowingly required Sarah Ellis to work in a home without adequate home staff workers or medical staffing and facilities, when it knew of the stressful working conditions and knew that her working without adequate staffing and facilities was substantially certain to result in injury and/or death. He further asserted that Normal Life knowingly required Sarah Ellis to work under stressful conditions when it knew of her diabetic condition and obesity and that not providing adequate assistance was substantially certain to result her injury and/or death. The petition sought damages under La.C.C. art. 2315.1 and art. 2315.2.
In response, defendants filed a peremptory Exception Of No Cause Of Action, which was denied on July 8, 1992.
Next, defendants filed an answer and later a Motion For Summary Judgment, alleging that the evidence failed to show an intentional tort. Following a hearing, the trial judge granted the Motion For Summary Judgment. In the judgment he stated that "... this suit against Normal Life of Louisiana, Inc. is hereby dismissed at plaintiff's cost." In his reasons for judgment, the trial judge stated that the submitted documents showed that there were no genuine issues of material fact and that Normal Life did not intentionally cause Sarah Ellis' death.
On appeal, plaintiff asserts that the trial judge erred in granting the Motion For Summary Judgment. First, he contends that the trial judge found no conscious intent on the part of Normal Life, but failed to address the question of whether the injury was substantially certain to follow from its acts. Second, plaintiff asserts that even if he is not entitled to pursue a tort action under the workers compensation statute, he still has a cause of action in tort, since Sarah Ellis' heart attack is not a compensable disease under the workers compensation act precluding recovery for workers compensation benefits, according to La.R.S. 23:1021(7)(e).
In his first argument, plaintiff asserts that a Motion For Summary Judgment is seldom appropriate when the issue involves intent or knowledge, citing Smith v. Estrade, 589 So.2d 1158 (La.App. 5th Cir.1991). Furthermore, he asserts that the evidence shows that the home violated state and federal resident-staff ratio laws enacted to protect and insure that the needs of the residents are met. That evidence was produced through the testimony of Kenneth Baker, an expert witness employed by the Louisiana Department of Health and Hospitals. Baker stated that state and federal laws require that the home have two health care workers on *424 duty for every six mentally retarded clients during the period that the residents are awake, Monday through Sunday. Plaintiff points out that in this case, the ratio was met during the work week (Monday through Friday), but on weekends only one worker was on duty from 5:00 am, the usual time the clients arose even on weekends, to 9:00 am when a second worker came on duty.
Plaintiff contends that the evidence shows that many of the residents were violent with each other and with the staff and, at times, required physical restraint. He asserts that the depositions of Iona Smith, the home manager, and Sonya Carter, one of the staff, show that one client continually ran away, another was in the habit of biting, one client routinely got a kitchen knife to threaten the others and the other clients would get into fights, pulling hair and striking each other and/or the staff members. He asserts that the records show that some of the clients needed physical assistance and some verbal help in getting washed and dressed when they awoke in the morning. Plaintiff claims that the job of restraining the residents when necessary was part of the job of the home staff workers, in addition to their normal duties. He argues that these conditions created such stress that it required two workers to handle the residents during the 11:00 pm to 9:00 am shift on the weekends, as well as during the week, since the residents usually awoke at 5:00 am.
Plaintiff asserts that the staff members complained about inadequate staffing in the late evening/early morning shift and that Normal Life was aware of Sarah Ellis' diabetes and obesity, which were contributing factors to her heart attack. Plaintiff claims that these contentions raise the issue of whether Sarah Ellis' death was not just consciously intentional, but substantially certain to follow, as set forth in the leading case on intentional tort, in the workers compensation area, Bazley v. Tortorich, 397 So.2d 475 (La.1981).
In response, defendants argue first that a Motion For Summary Judgment is an appropriate procedural tool to dispose of the issue of the intentional tort exception to the workers compensation law, citing King v. Schuylkill Metals Corporation, 581 So.2d 300 (La. App. 1st Cir.1991). Next, defendants assert that the trial judge did not err in granting the summary judgement because the evidence clearly shows that Normal Life did not consciously intend to injure Sarah Ellis or that the injury was substantially certain to follow. Defendants point out that Sarah Ellis' supervisor testified that no one intended to injure her and further, had she called in ill, a replacement would have been found, even if she (the supervisor) had to work the shift herself. The denial of intent was supported by an affidavit of Sheryl Ross, the Director of the home.
Defendants also contend that the facts do not show that the injury was substantially certain to follow. They assert that understaffing is an allegation related to unsafe working conditions, which are not considered by the courts to mean that the injury is substantially certain to follow. They cite Posseno v. Security Insurance Group, 517 So.2d 1281 (La.App. 4th Cir.1987) and Faridnia v. Ecolab, Inc., 593 So.2d 936 (La.App. 4th Cir.1992). Defendants assert that "substantially certain to follow" requires more than a reasonable probability that an accident or injury will occur and that "certain" has been defined as "inevitable" or "incapable of failing", citing King at 302 and Hood v. South Louisiana Medical Center, 517 So.2d 469, 471 (La.App. 1st Cir.1987).
A motion for summary judgment is properly granted when the pleading, depositions, answers to interrogatories, together with affidavits, if any, show there is no genuine issue as to material fact and that mover is entitled to judgment as a matter of law. La.C.C.P. art. 966.
The petition filed by plaintiff states, inter alia, that on April 14, 1991, during the 11:00 p.m. to 9:00 a.m. shift, Sarah Ellis suffered a fatal heart attack while in the course and scope of her employment with Normal Life. The petition further states that her death was caused solely and proximately by the intentional actions of defendants and caused damages in the following respects:
"A) Knowingly requiring Sarah Ellis to work in an understaffed home when defendants knew of the stressful working conditions to which decedent was subjected, and *425 knew that her working without proper staffing in such conditions was substantially certain to result in injury and/or death to decedent;
B) Knowingly requiring Sarah Ellis to work in the home without adequate medical staffing and facilities when defendants knew of these inadequacies and knew that decedent's working in such conditions was substantially certain to result in injury and/or death to decedent;
C) Knowingly requiring Sarah Ellis to work under stressful conditions without adequate assistance when defendants knew of decedent's diabetic condition and obesity, and knew that her working without proper assistance was substantially certain to result in injury and/or death to decedent.
Further, that as a result of the actions of defendants, Sarah Ellis suffered damages, including pain and suffering and medical expenses, which the petitioners are entitled to recover pursuant to the provisions of LSA-C.C. Article 2315.1.
As a result of the actions of defendants, the petitioners have suffered damages due to the wrongful death of their wife and mother, including but not limited to mental anguish, loss of love and affection, loss of service, loss of society, and funeral expenses, which petitioners are entitled to recover under the provisions of LSA-C.C. Article 2315.2."
The petition's statements assert a cause of action for an intentional tort by defendants and also a cause of action for negligence, both of which fall within La.C.C. art. 2315. The petition does not specifically cite the workers compensation act and Normal Life raises this defense for the first time in its exception of no cause of action, which was denied by the trial judge. However, before we can determine whether or not the trial judge correctly granted the Motion For Summary Judgment, we must first decide whether or not this case falls within the workers compensation act or if it is a tort action not subject to the defenses available to defendant under the workers compensation act.
R.S. 23:1032 provides that the employee's exclusive remedy for an on the job injury, sickness or disease is the workers compensation act. The pertinent provision states:
A. (1)(a) The rights and remedies herein granted to an employee or his dependent on account of an injury, or compensable sickness or disease for which he is entitled to compensation under this Chapter, shall be exclusive of all other rights and remedies of such employee, her personal representatives, dependents, or relations, against his employer, or any principal...
B. Nothing in this Chapter shall affect the liability of the employer, ... resulting from an intentional act.
(Emphasis Added)
Heart-related or perivascular injuries "shall not be considered a personal injury by accident arising out of and in the course of employment and is not compensable pursuant to this Chapter ..." unless two elements are proven by clear and convincing evidence. La.R.S. 23:1021(7)(e). First, plaintiff must prove that the physical work stress was extraordinary and unusual compared to the stress or exertion experienced by the average employee in that occupation. Second, plaintiff must prove that the physical work stress or exertion, and not some other source of stress or preexisting condition, was the predominant and major cause of the heart-related or perivascular injury, illness, or death. The burden of proof in such cases is, and was intended to be, more stringent than the preponderance of the evidence standard imposed in workers compensation cases prior to the enactment of this provision in 1990. The cases applying the new burden of proof are sparse, as we found in our recent decision of Harold v. La Belle Maison Apartments, 93-867 (La.App. 5th Cir. March 29, 1994); 636 So.2d 996. As we noted there, only one case out of five permitted recovery after finding the plaintiff met his burden of proof by clear and convincing evidence. See citations therein, Id. at p. 4, 636 So.2d at 998.
In this case, plaintiff's allegations do not show by clear and convincing evidence that the heart attack was the predominant result of any extraordinary work stress and that it was the predominate cause of the death. *426 Thus, Mrs. Ellis' death resulted from a non-compensable disease under the workers compensation act.
The question of whether an employee is entitled to pursue a tort action against his employer when his injury is not compensable under the workers compensation act has been addressed in eleven cases in the decades since the workers compensation act was first enacted. In nine of the eleven cases, the Louisiana Supreme Court and the first, second and third circuit courts of appeal found the plaintiff was entitled to bring a tort action against the employer when the injury was not compensable under the act. Boyer v. Crescent Paper Box Factory, 143 La. 368, 78 So. 596, 598 (1918), (Plaintiff suffered non-compensable disfigurement), Spillman v. South Central Bell Telephone Company, 518 So.2d 994 (La.1988) [per curiam holding that if a mental injury is not compensable, then the employer is not granted immunity from tort], Samson v. Southern Bell Telephone & Telegraph Co., 205 So.2d 496 (La.App. 1st Cir.1967) [non-compensable mental injury], Hunt v. Milton J. Womack, Inc., 616 So.2d 759 (La.App. 1st Cir.1993), [Heart attack], Faulkner v. Milner-Fuller, Inc., 154 So. 507 (La.App. 2d Cir.1934) [non-compensable respiratory injury], Clark v. So. Kraft Corp., 200 So. 489 (La.App. 2nd Cir.1940) [Foot damage from standing on floor flooded with chemicals], Connor v. Naylor Industrial Services, 579 So.2d 1226, 1227 (La.App. 3rd Cir.1991), writ denied, 585 So.2d 568 (La.1991) [non-compensable hearing loss].
The second circuit questioned Boyer and its progeny and distinguished its own prior decisions (Faulkner and Clark) in the 1987 case of Swilley v. Sun Oil Co., 506 So.2d 1364 (La.App. 2nd Cir.1987). In Swilley, however, the issue was not whether plaintiff had an action in tort when his work-related injury was not compensable under workers compensation. There, the issue was the "scope or extent of the compensation benefits available to him for his particular injury ..." which was similar to the plaintiffs case in Bergeron v. New Amsterdam Casualty Co., 243 La. 108, 141 So.2d 832 (1962). As pointed out in 14 Malone & Johnson, La. Civil Law Treatise, Workers' Compensation Law and Practice § 365, p. 160 (hereinafter Malone & Johnson), in instances where plaintiff is not afforded any compensation under the act for the injury, the courts have historically been prepared to entertain tort suits against the employer. On the other hand, when plaintiff has received or is entitled to receive compensation, but seeks "additional" damages for a non-compensable element, the tort suit has not been allowed. See: Swilley, supra; Bergeron, supra; Ancor v. Beldon Concrete Products, Inc., 260 La. 372, 256 So.2d 122 (1972). This policy is sound, based on the purposes of the act.
In Atchison v. May, 201 La. 1003, 10 So.2d 785, 788 (1942), the court denied plaintiffs a cause of action in tort against their deceased brother's employer because the deceased employee's injury was covered by the workers compensation act. In its decision, the court noted that the Boyer, Faulkner and Clark cases were not in discord with the conclusion, but were distinguishable. Id. at 789. In reaching its conclusion, the court explained the purpose of the workers compensation act as follows:
The act, which is social legislation, was passed for the joint benefit of labor and management in order to insure that employees who became disabled as a result of their labors in hazardous industries would have, during the period of their disability, a weekly income for the upkeep of themselves and their families. It was also deemed advisable to provide for compensation, in cases of death, to the persons dependent upon the employee for support so that these persons would not be entirely bereft of funds during the period of time following the employee's death when they, of necessity, were compelled to reconstruct their lives and seek a means of support, thus avoiding the possibility that these persons would become public charges. In order that this end might be accomplished, the Legislature provided for sacrifices to be made by both the employer and the employee. The employee was required to waive the right granted him under the general law, Article 2315 of the Civil Code, in consideration of receiving a fixed percentage of his wages during the period of *427 his disability. The employer, on the other hand, was deprived of the defenses afforded to him by the general law and he was assured that, in case any of his employees were injured, they would be entitled to no more than the amount stipulated in the statute as compensation during the period of disability. Id. at 788.
In a recent Louisiana Supreme Court decision, the court pointed out that "the dominant purpose ... was not to abrogate existing tort remedies ... Rather, it was to provide social insurance to compensate victims of industrial accidents because it was widely believed that the limited rights of recovery available under the general tort law was inadequate to protect them." Roberts v. Sewerage and Water Board of New Orleans, 92-2048 p. 7 (La. 3/21/94), 634 So.2d 341, 345. Because employers at the time the act was passed had the judicially created and strictly enforced "unholy trinity" defenses available to them (assumption of the risk, contributory negligence and fellow servant rule), less than a quarter of work-related accidents resulted in recovery. Id. at 345. Thus, injured workers were subsidizing economic growth. Id. at 345.
In 1993, the court in Hunt held that an employee who suffered a heart attack on the job was entitled to pursue a negligence claim against the employer when the worker's claim did not fall into the exceptions to La. R.S. 23:1021(7)(e)(i) and (ii) and, as a consequence, was deprived of the benefits of the workers compensation act. The court discussed the purpose of the workers compensation act, the amendment adding the exclusion for heart attack victims except in certain circumstances and the prior law. The Hunt court relied on the language of the exclusivity provision of the workers compensation statute, La.R.S. 23:1032(A)(1)(a) and of La. R.S. 23:1021(7)(e) as being clear and unambiguous.
Based on the jurisprudence and the clear language of the statute, we agree with the latest statement on the issue in Hunt. Consequently, we find that when plaintiff suffers a non-compensable workers compensation injury or disease, a cause of action exists in the general tort law. Thus, the next question is whether plaintiff in this case has pled a viable tort suit against the deceased's employer.
Defendant argues that plaintiff failed to plead a negligence action in his petition. We disagree. Louisiana is a fact pleading state under the Louisiana Code of Civil Procedure. See: La.C.C.P. art. 862. "As long as the facts constituting a claim are alleged, the party may be granted any relief to which he is entitled under the pleadings and the evidence; the `theory of the case' doctrine, under which a party must select a theory of his case or defense and adhere to it throughout the litigation, has been abolished." First South Production Credit Association v. Georgia-Pacific, 585 So.2d 545, 548 (La. 1991); Gisclair v. Matmoor, Inc., 537 So.2d 876 (La.App. 5th Cir.1989). Plaintiff is only required to set forth facts surrounding the claim and is not required to assert all theories of recovery. Furthermore, courts should construe pleadings so as to achieve substantial justice and in order to reach the truth, should avoid the application of harsh, technical rules of pleading. Gisclair at 879. In this case, plaintiff's petition set forth facts which support an action in negligence, as well as intentional tort.
Finally, the trial judge did not rule on the negligence issue, apparently because he believed that the intentional tort was the sole issue before him. However, since there is another issue (negligence) arising from the same occurrence, the trial court judgment, as it stands on the intentional tort issue, is a partial summary judgment. Under Everything on Wheels v. Subaru South, Inc., 616 So.2d 1234, (La.1993), this judgment is not a partial final judgment which is appealable, but is an interlocutory judgment with no showing of irreparable injury. Thus, it is not appealable. See: Everything on Wheels, at 1241, FN 12, La.C.C.P. arts. 1915, La.C.C.P. art. 966, La.C.C.P. art. 2083. It is reviewable as a writ invoking our supervisory jurisdiction. However, we decline to exercise our supervisory jurisdiction since, to do so, will not materially advance the action since defendant will remain in the case. See: Everything on Wheels at 1239. Thus, we pretermit the issue of whether the trial judge correctly decided the intentional tort theory of *428 plaintiff's case and remand the case for further proceedings.
Accordingly, the judgment of the trial court is hereby reversed and the case remanded for further proceedings consistent with this opinion.
Costs of this appeal are to be paid by appellee.
REVERSED AND REMANDED.