47 So.3d 609 (2010)
Edward E. LLOYD, Individually and as the Natural Tutor of Edward Caldwell, a Minor, Cheryl Caldwell, Kimberly Jackson, Eldrick Caldwell, and Roy Caldwell, Plaintiffs
v.
SHADY LAKE NURSING HOME, INC., XYZ Insurance Company, Louisiana Nursing Home Association Malpractice and General Liability Trust, Louisiana Nursing Home Association of Professional and General Liability Trust, and The Estate of William P. Dimaggio, Defendants.
No. 45,180-CW.
Court of Appeal of Louisiana, Second Circuit.
August 25, 2010.
*610 Joseph J. Bailey, Jeremy C. Cedars, Provosty, Sadler, deLaunay, Fiorenza & Sobel, Alexandria, LA, for Defendant-Applicant, Shady Lake Nursing Home, Inc.
Charles Dean Jones, for Plaintiffs-Respondents.
Before BROWN, STEWART, and LOLLEY, JJ.
STEWART, J.
Plaintiffs, the husband and children of Margaret Caldwell, filed a wrongful death action against her employer, Shady Lake Nursing Home, Inc. ("Shady Lake").[1] Cross motions for summary judgment filed by the parties raised the issue of whether plaintiffs' sole and exclusive remedy was under the Louisiana Workers' Compensation Act ("LWCA") or whether plaintiffs could pursue their tort action. The trial court denied both motions. At Shady Lake's request, this court exercised its supervisory power and agreed to review the denial of its motion for summary judgment. For the following reasons, we affirm.

FACTS
On September 19, 2007, Margaret Caldwell was working at Shady Lake Nursing Home as a certified nursing assistant ("CNA"). She was 54 years old and had worked for Shady Lake for approximately *611 20 years. She was morbidly obese and had high blood pressure. Caldwell was preparing to mop the floor near a nurse's station when she saw William DiMaggio, a patient at Shady Lake, standing next to a snack cart located near the station. Caldwell instructed DiMaggio to return to his room. DiMaggio became angry and attacked her, striking her in the face. DiMaggio was quickly pulled away from her and returned to his room.
Immediately following the attack, Caldwell began having difficulty breathing and experienced elevated blood pressure levels. She was taken to East Carroll Parish Hospital and pronounced dead approximately one hour after being struck by DiMaggio.
An autopsy found the immediate causes of death to be hypertensive heart disease and coronary artery disease, with the underlying cause of death being a physical blow to the face. The death was ruled a homicide. DiMaggio was arrested and charged with manslaughter, but was later found to be mentally incompetent to stand trial and confined to the forensic division of a mental health institution. In oral argument to this court, the attorneys stated that DiMaggio had died.
Plaintiffs filed their wrongful death petition against Shady Lake, XYZ Insurance Company, and the Estate of William P. DiMaggio on February 13, 2008.[2] The petition alleged liability on the part of Shady Lake under theories of negligence and intentional tort. As alleged in the petition, DiMaggio had been diagnosed as having impulse control disorder, dementia from a closed head injury, psychotic disorder associated with a closed head injury, and a history of chemical dependency and alcoholism prior to arriving at Shady Lake. His history was known to Shady Lake when it accepted DiMaggio as a patient. Plaintiffs alleged that it was foreseeable that nursing home employees would be subjected to fatal harm. They also alleged that Shady Lake exhibited an intentional disregard for decedent's welfare and breached the duty of care owed to protect employees from violent attacks by mentally incapacitated patients.
Plaintiffs filed a motion for partial summary judgment on April 30, 2009, asserting that there was no coverage under the LWCA because of the heightened burden of proof required for heart-related and perivascular injuries and therefore no tort immunity for the employer. Shady Lake filed a motion for summary judgment on September 2, 2009, requesting dismissal of plaintiffs' tort claims against it. Shady Lake argued that there was no genuine issue of material fact as to whether Caldwell's death was compensable under the LWCA and that its actions, even if proven, did not rise to the level of an intentional act.
The trial court identified the basic issues raised in the motions as whether plaintiffs' claim is restricted to workers' compensation or whether they can pursue a tort action for damages. The trial court noted that DiMaggio's act of striking Caldwell was indisputably an intentional act. While the trial court recognized that DiMaggio's intent would not transfer to Shady Lake for purposes of finding an intentional act on its part, it also recognized issues on the record as to whether Shady Lake might be liable under an intentional tort or negligence theory for its own actions in bringing about the incident, *612 namely, in accepting a patient predisposed to commit a violent act and in failing to provide adequate security. In denying Shady Lake's motion for summary judgment, the trial court apparently found a genuine issue as to whether Caldwell's heart-related or perivascular injury was a personal injury by accident arising out of and in the course of her employment such that it would be compensable under workers' compensation. The trial court's denial of both motions did not resolve whether this suit belongs in workers' compensation or general tort.
This court granted Shady Lake's timely application for supervisory writs to review the trial court's denial of its motion for summary judgment.[3]

DISCUSSION
Shady Lake presents three issues for review. The first two involve the application of La. R.S. 23:1021(8) and ask whether the LWCA standard for heart-related and perivascular injury precludes summary judgment where Caldwell's cardiovascular incident resulted from an otherwise compensable work-related injury and where she experienced chest pain and shortness of breath immediately following the attack by DiMaggio. The third issue is whether there is any evidence of an intentional act by Shady Lake that would deny it statutory immunity under the LWCA.
Appellate courts review summary judgment de novo, using the same criteria that govern the trial court's consideration of whether summary judgment is appropriate. Yokum v. 615 Bourbon St., L.L.C., 2007-1785 (La.2/26/08), 977 So.2d 859. Summary judgment shall be rendered if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show there is no genuine issue as to material fact and that the movant is entitled to judgment as a matter of law. La. C.C.P. art. 966; Hines v. Garrett, 2004-0806 (La.06/25/04), 876 So.2d 764. A genuine issue of material fact is one as to which reasonable persons could disagree; if reasonable persons could reach only one conclusion, there is no need for trial on that issue and summary judgment is appropriate.
Except for intentional acts, the rights and remedies afforded by workers' compensation provide the exclusive means for redressing workplace injuries or compensable sickness or disease. La. R.S. 23:1032(A)(1)(a). Generally, if an employee receives a personal injury by an accident arising out of and in the course of his employment, the employer is required to pay compensation benefits. La. R.S. 23:1031(A); Gooden v. B E & K Const., 33,457 (La.App.2d Cir.6/23/00), 764 So.2d 1206. An accident is defined by La. R.S. 23:1021(1) as follows:
an unexpected or unforeseen actual, identifiable, precipitous event happening suddenly or violently, with or without human fault, and directly producing at the time objective findings of an injury which is more than simply a gradual deterioration or progressive degeneration.
The terms "injury" and "personal injuries" are defined as including only injuries caused by violence to the body's physical structure and such disease or infections that naturally result therefrom. La. R.S. 23:1021(8)(a). These terms shall in no case be construed to include any other form of disease or derangement however caused or contracted. Id.
*613 Of specific relevance to this matter is La. R.S. 23:1021(8)(e), which provides:[4]
(e) Heart-related or perivascular injuries. A heart-related or perivascular injury, illness, or death shall not be considered a personal injury by accident arising out of and in the course of employment and is not compensable pursuant to this Chapter unless it is demonstrated by clear and convincing evidence that:
(i) The physical work stress was extraordinary and unusual in comparison to the stress or exertion experienced by the average employee in that occupation, and
(ii) The physical work stress or exertion, and not some other source of stress or preexisting condition, was the predominant and major cause of the heart-related or perivascular injury, illness, or death.
For a heart-related or perivascular injury to be compensable under the LWCA, both elements must be proven by clear and convincing evidence. Gooden, supra; Ellis v. Normal Life of Louisiana, 93-1009 (La.App. 5th Cir.5/31/04), 638 So.2d 422. La. R.S. 23:1021(8)(e) requires that the physical work stress be extraordinary and unusual in comparison to that experienced by the average employee in the same occupation. This requirement relates to the work actually being performed at the time of the injury or death. Gooden, supra.
Shady Lake argues that Caldwell's death resulted from a compensable accident, namely, the attack by DiMaggio. To avoid application of La. R.S. 23:1021(8)(a), Shady Lake asserts that DiMaggio's act of striking Caldwell should be considered an accident that aggravated her preexisting condition resulting in her stroke and heart attack. This argument overlooks the clear statutory language directing that a heart-related or perivascular death "shall not be considered a personal injury by accident arising out of and in the course of employment and is not compensable" unless clear and convincing evidence establishes that the two prongs of R.S. 23:1021(8)(a) are satisfied. For this reason, summary judgment is not proper on the basis that Caldwell's heart-related death was merely the natural result of a compensable accident.
Shady Lake also argues that the facts satisfy the heightened standard under La. R.S. 23:1021(8)(a) for workers' compensation coverage. However, there are genuine issues of fact as to whether it can be shown by clear and convincing evidence that Caldwell's physical work stress was extraordinary and unusual in comparison to that experienced by the average CNA and whether such stress was the predominant and major cause of her death. There is no dispute that Caldwell was mopping when attacked. Nothing in the record shows that her regular job duties, particularly the work she was performing when attacked, involved unusual or extraordinary physical stress. The issue is whether the attack by DiMaggio can be considered extraordinary and unusual physical work stress and whether the attack, rather than some other source of stress or her preexisting conditions, was the predominant and major cause of her death. On this point, there is conflicting evidence that precludes summary judgment.
The evidence shows that Caldwell had preexisting conditions that contributed to *614 her death. These included an enlarged heart, coronary artery disease, elevated cholesterol, and morbid obesity. Dr. Steven Hayne, the pathologist who conducted the autopsy, determined the immediate cause of death to be hypertensive heart disease and coronary artery disease. He referred to the blow to her face by DiMaggio as an underlying cause of death and a precipitating event. He explained in his deposition that the excitement caused by the blow, rather than the physical injury from it, burdened Caldwell's already significant cardiovascular disease and was part of a cascade of events that led to her death. The reference to the blow as a precipitating event does not equate to the conclusion that it was the predominant or major cause of her heart-related death.
Moreover, witnesses offered conflicting testimony on whether the incident was extraordinary or unusual. When questioned about whether the incident involving DiMaggio would be considered unusual or extraordinary, Dr. Hayne opined that physical and verbal assaults occur in hospital settings all the time. Shady Lake's medical director Dr. Donovan Bailey, its administrator Don Temple, and Chasidy Spencer, a nurse on duty at the time of the incident, described DiMaggio's attack as unusual. However, Spencer admitted that patients had struck CNAs and nurses in the past, and Temple also indicated that it was not uncommon for older residents to hit, bite, or scratch staff. The deposition testimony of Annie Washington and Patricia Williams, both employees of Shady Lake, indicated that DiMaggio was known to be combative and aggressive. Temple described him as violent.
In summation, there is testimony indicating both that the incident was unusual and that it would not necessarily be unusual for residents to strike out at the staff. There is also evidence that the incident was a precipitating event to Caldwell's death but that she suffered from serious preexisting conditions which appear directly related to the immediate causes of her death, namely, hypertensive heart disease and coronary artery disease. Considering the totality of the summary judgment evidence, we find that reasonable persons could disagree as to whether Caldwell experienced extraordinary or unusual physical work stress and whether that stress, rather than her preexisting conditions, was the predominant and major cause of her heart-related death. These are factual matters that present a genuine issue for trial.
When an employee is not entitled to a remedy under the LWCA, then there is no immunity in tort for the employer. O'Regan v. Preferred Enterprises, Inc., 1998-1602 (La.3/17/00), 758 So.2d 124. In O'Regan, supra, the Louisiana Supreme Court addressed whether an employee who has a disease that is presumed to be non-occupational is barred by the LWCA's exclusivity provisions from pursuing a tort remedy against her employer. The plaintiff, who had been employed at a laundry service for four months, claimed that exposure to chemicals caused her to develop myelodysplasia. She initially sought compensation benefits. Because she had been employed for less than 12 months, she had to overcome the presumption that the disease was not contracted in the course of and arising out of her employment. La. R.S. 23:1031.1(D). To overcome the presumption, she had to prove her claim by an "overwhelming preponderance of the evidence."[5] She failed to do so, and subsequently *615 filed a tort suit against her former employer asserting claims of negligence and intentional tort. On a motion for summary judgment on the negligence claim, the employer argued that O'Regan's sole remedy was workers' compensation. Ultimately, the supreme court allowed the plaintiff to proceed with her tort claim.
The supreme court's decision was based on the legislatively created presumption in R.S. 23:1031.1(D), which the court recognized as creating a category of employees "who are otherwise eliminated from the benefits" of the LWCA. Id., 1998-1602, p. 12, 758 So.2d at 132; La. R.S. 23:1031(A). The court further reasoned that if the employee fails to meet the heightened burden of proof to obtain compensation benefits, then the disease remains non-occupational. The employee is eliminated from the protections of the LWCA and may pursue other remedies against the employer.
O'Regan, supra, recognized that the legislature crafted a heightened burden of proof for certain categories, including mental injuries and heart-related and perivascular injuries, without also imposing a non-occupational presumption for these categories. See La. R.S. 23:1021(8). As to these categories, the court did not address whether an employee who could not meet the heightened burden of proving the causal connection between his injury and employment would have a tort remedy available. The O'Regan court based its decision solely on the statutory presumption. Id., see footnote 13. However, Justice Lemmon wrote in concurrence that by raising the burden of proof for certain employees, the Legislature eliminated their compensation remedy and thereby subjected the employer to tort liability. He reasoned that an employee who could prove his claim for compensation by a preponderance of the evidence, but not meet the overwhelming preponderance/clear and convincing standard, is denied a remedy because of the heightened burden and is therefore entitled to pursue a remedy in tort. We agree with this reasoning.
Other appellate courts have recognized that the noncompensable nature of a heart-related injury due to the heightened burden of proof under La. R.S. 23:1021(8)(e) entitles an employee to pursue a tort action against his employer. See Tomas v. Conoco Food Distributors, 97-426 (La.App. 3d Cir. 10/22/97), 702 So.2d 944; Ellis v. Normal Life of Louisiana, supra; Hunt v. Milton J. Womack, Inc., 616 So.2d 759 (La.App. 1st Cir.1993), writ denied, 623 So.2d 1309 (La. 1993). See also Simmons v. Baumer Foods, Inc., 2009-1739 (La.App. 4th Cir.4/28/2010), 2010 WL 1727845, ___ So.3d ___.
In Ellis, supra, a staff worker at a group home for adults with developmental disabilities had a fatal heart attack while at work. Her family filed a wrongful death action. The trial court granted the employer's motion for summary judgment on the grounds that there was no evidence of an intentional tort. The appellate court reversed. The court found that the plaintiffs' petition stated claims for both an intentional tort and negligence based on allegations that the employer either knew or should have known that the home was understaffed and yet required Ellis, who was diabetic and obese, to work under stressful conditions without adequate assistance. The court further found that the allegations did not satisfy the clear and *616 convincing standard for heart-related injuries under the LWCA. Because Ellis's death resulted from a non-compensable disease, she was entitled to bring a tort action against her employer.
In the matter before this court, the plaintiffs have asserted claims based on both intentional tort and negligence. If it is determined that the plaintiffs cannot meet the heightened burden of clear and convincing evidence under La. R.S. 23:1021(8)(e), then they are not bound by the exclusivity provisions of the LWCA and are not restricted to an intentional tort claim against Shady Lake.
Shady Lake asserts that the trial court has already determined that the intentional act exclusion set forth in La. R.S. 23:1032 does not apply inasmuch as DiMaggio's intent does not transfer to Shady Lake. The trial court's denial of the motions for summary judgment does not constitute a ruling on the plaintiffs' intentional tort claim.
Intentional act under the workers' compensation law means the same as intentional tort. White v. Monsanto Co., 585 So.2d 1205 (La.1991). The meaning of intent in the context of the exclusive remedy provision is that the defendant "either desires to bring about the physical results of his act, or believes they were substantially certain to follow from what he did." Id., at 1208. Thus, intent refers to both consequences that are desired and those that are substantially certain to result from the defendant's act. Id., citing Bazley v. Tortorich, 397 So.2d 475, 481 (La.1981).
Shady Lake's administrators testified that Mr. DiMaggio was known to be combative, to punch holes in walls, and frequently threatened to hit personnel. DiMaggio's combative behavior, along with his psychotic condition, was well documented by Shady Lake staff, yet DiMaggio was approved for admission. In determining whether summary judgment is appropriate, jurisprudence provides that:
It is not the function of the trial court to determine or inquire into merits of issues raised, and the trial court may not weigh the conflicting evidence on a material fact. If evidence presented is subject to conflicting interpretations, summary judgment is not proper.
Federated Rural Elec. Ins. Corp. v. Gulf South Cable Inc., 2002-852 (La.App. 3d Cir.12/11/02), 833 So.2d 544. The pleadings, depositions, and other documents contained within the record show that there is a conflicting interpretation of facts thus creating a genuine issue of material fact as to whether Shady Lake is free from fault or liable for either its intentional act or negligence. Because more than one conclusion can be reached based on the record, summary judgment is inappropriate.

CONCLUSION
Based on the forgoing reasons, we affirm the trial court's denial of Shady Lake's motion for summary judgment. Costs are assessed against Shady Lake.
AFFIRMED.
BROWN, C.J., dissents with written reasons.
BROWN, Chief Judge, dissents.
Although decedent was injured in a clearly identifiable accident occurring within the course and scope of her employment, plaintiffs, the husband and children of decedent, filed a tort action for wrongful death. Plaintiffs asked for a jury trial. Plaintiffs filed a motion for partial summary judgment on the question of liability. Defendant, Shady Lake Nursing Home Inc. ("Shady Lake"), also filed a motion for summary judgment. The facts were virtually undisputed. The issue argued in both *617 motions was whether plaintiffs' sole and exclusive remedy was under the Louisiana Workers' Compensation Act ("LWCA"). Without resolving the workers' compensation coverage question, the trial court denied both motions.
On September 19, 2007, Elizabeth Caldwell-Lloyd was working at Shady Lake Nursing Home as a certified nursing assistant when, at approximately 2:45 a.m., she was physically attacked by a patient, William DiMaggio. Immediately after being struck by DiMaggio, Mrs. Caldwell-Lloyd began having difficulty breathing and her blood pressure increased dramatically. She was then taken to East Carroll Parish Hospital and was pronounced dead at 3:56 a.m.approximately one hour after being struck by DiMaggio.
In their presentation and argument to the trial court on the summary judgment motion, plaintiffs asserted the intentional act exclusion. The trial court questioned, but did not decide, whether this issue should be determined by a jury. The trial court ruled that the mens rea of DiMaggio did not transfer to Shady Lake for the purpose of establishing an intentional act and that the argument that Shady Lake was "substantially certain" that such an assault by DiMaggio on Mrs. Caldwell-Lloyd would occur was "thin" and "a stretch." Even so, the trial court denied both parties' motions for summary judgment.

The Exclusivity Rule of Workers' Compensation
Except for intentional acts, the rights and remedies afforded by the LWCA provide the exclusive means of redressing work place injuries. La. R.S. 23:1032. The LWCA represents a compromise in which the employer is responsible to pay legislatively fixed benefits regardless of fault. In exchange for accepting no fault responsibility, the employer is guaranteed immunity from lawsuits for tort damages arising out of the employment relationship, except for intentional torts. Thomas v. State Department of Transportation and Development, 27,203 (La.App.2d Cir. 10/12/95), 662 So.2d 788, writ denied, 97-0745 (La.05/01/97), 693 So.2d 736. This compromise is the core of the workers' compensation scheme. "The power to enact a Workmen's Compensation Law reposes in the law-making body of the state. The amount of compensation, to whom due and payable, the limitations and restrictions within which it may be demanded, peculiarly address themselves to the law-making power...." Haynes v. Loffland Bros. Co., 215 La. 280, 40 So.2d 243, 291 (1949).
La. R.S. 23:1032 A(1)(a) provides in part:
Except for intentional acts provided for in Subsection B, the rights and remedies herein granted to an employee or his dependent on account of an injury, or compensable sickness or disease for which he is entitled to compensation under this Chapter, shall be exclusive of all other rights, remedies, and claims for damages.... (Emphasis added.)

Intentional Acts Exception
Plaintiffs' presentation to this court, as well as the majority opinion, appears to have abandoned the intentional act argument or at least "sent it back down to the minor leagues."
Tort immunity for the employer does not apply when the employee's injuries are the result of an intentional act. La. R.S. 23:1032(B). The LWCA, however, was not intended to make the employer liable for the intentional acts of third parties who are not listed in the statute and not employees of the company. See Reeder v. Laks Corp., 555 So.2d 7 (La.App. 1st Cir. 1989), writ denied, 559 So.2d 142 (La. *618 1990). In Reeder, supra, the plaintiff was employed at a nursing care facility and was attacked by a mental patient of the facility. The appellate court rejected the plaintiff's argument that the facility was liable for the actions of the patient, holding that the allegations of fault against the defendant were "really negligent supervision and failure to provide a safe work place." Id. at 10.
Plaintiffs argue that Shady Lake committed an intentional act by admitting DiMaggio to Shady Lake and failing to provide proper security and training for its employees. In order for an act to be intentional, the person who acts must either consciously desire the physical injury, whatever the likelihood of such a result happening, or know that the injury is substantially certain to follow from his conduct. Thus, intent has reference to a desire to cause physical injury. White v. Monsanto Co., 585 So.2d 1205 (La.1991).
Recovery for an accident that occurred because of unsafe working conditions is limited to workers' compensation. Reeder, supra. See also Wilson v. State, Dept. of Health and Human Resources, 628 So.2d 1164 (La.App. 3d Cir.1993) (held that workers' compensation was the exclusive remedy of a prison official who was intentionally stabbed by a prisoner).
In the present case, the facts are undisputed. No one at Shady Lake desired to afflict any injury or harm upon Mrs. Caldwell-Lloyd, a 20-year employee. Plaintiffs alleged numerous acts that they claim were intentional, but none meets the substantial certainty test for an intentional act. It was undisputed that DiMaggio, though exhibiting some outbursts, had never attacked a nurse or other patient prior to or after coming to Shady Lake. Further, DiMaggio's treating physician, prior to DiMaggio's arrival at Shady Lake, reported that his condition had improved since he started a new medication regimen and that his outbursts were very infrequent. DiMaggio was cleared for admission after an examination by Shady Lake medical personnel. It was not substantially certain or inevitable that DiMaggio would suddenly and violently attack Mrs. Caldwell-Lloyd, causing her death. At best, the danger was foreseeable but not substantially certain. Therefore, the intentional act exception does not apply.

Compensability of Heart-Related or Perivascular Injuries
Plaintiffs' primary argument, which was adopted in the majority opinion, relates to a heightened burden of proof of causation. In O'Regan v. Preferred Enterprises, Inc., 98-1602 (La.03/17/00), 758 So.2d 124, the Louisiana Supreme Court allowed the plaintiff to proceed with a tort claim against her employer after she had been denied benefits by the WCJ and the court of appeal. O'Regan was employed at a laundry service where she was exposed to certain chemicals that she claimed led her to develop myelodysplasia. Under the LWCA, O'Regan's illness was presumed to be non-occupational because she had been working at her job for less than 12 months and she was required to overcome the presumption by an overwhelming preponderance of evidence.[6] The supreme court noted that the Act itself presumed that the claim was not covered. If the claim is not covered under the Act, then there is no compensation remedy and a tort claim can be filed. O'Regan, supra.
*619 In the present case, plaintiffs have asserted a wrongful death claim. Plaintiffs do not contend that there is no coverage under the compensation act but only that they cannot prove causation due to the heightened burden of proof (by clear and convincing evidence) required for heart-related and perivascular injuries as defined in La. R.S. 23:1021(8)(e).
The supreme court in O'Regan, supra, cautioned that a conceptual distinction must be made between injuries which do not come within the Act's coverage provisions and injuries which are covered but for which no compensation is payable. The O'Regan court explained that its discussion of the case was based "solely upon the statutory presumption placing the employee outside of the Act." Id. at 133. Further, the supreme court listed the statute governing heart-related and perivascular injuries as an example of a legislatively crafted higher burden of proof without a non-occupational presumption.
In the present case, plaintiffs filed suit in the civil district court, eschewing any attempt to pursue a remedy in workers' compensation. In this case, the statute does not invoke a non-occupational presumption as was the case in O'Regan, supra.
If an employee receives a personal injury by an accident arising out of and in the course of her employment, the employer is required to pay compensation benefits. La. R.S. 23:1031(A); Gooden v. B E & K Construction, 33,457 (La.App.2d Cir.06/23/00), 764 So.2d 1206. An accident is defined by La. R.S. 23:1021(1) as follows:
[A]n unexpected or unforeseen actual, identifiable, precipitous event happening suddenly or violently, with or without human fault, and directly producing at the time objective findings of an injury which is more than simply a gradual deterioration or progressive degeneration.
There is no dispute that when the attack occurred, Mrs. Caldwell-Lloyd was at work as a certified nursing assistant at Shady Lake Nursing Home. In the course of her work, she directed DiMaggio to return to his room. He then proceeded to physically attack her without warning. This was an accident, that is, an identifiable, physical event which directly produced at that time actual injury, a busted jaw, difficulty in breathing and elevated blood pressure. Within one hour Mrs. Caldwell-Lloyd was dead.
In Wilson, supra at 1167, Justice Knoll, then a judge on the Third Circuit and writing for the court, stated that "[d]espite her physical disabilities which have further manifested themselves through the years, the common thread of causation which runs throughout is the mental injury which Mrs. Wilson received when she was stabbed [by a prisoner]."
Whether by a preponderance or clear and convincing evidence the common thread of causation of Mrs. Caldwell-Lloyd's heart/perivascular-related death is the beating she received arising out of and within the course and scope of her employment.
An employer takes a worker as he finds her, and a worker who is more susceptible to injury is entitled to no less protection under the LWCA than a healthy one. Harvey v. B E & K Construction, 30,825 (La.App.2d Cir.08/19/98), 716 So.2d 514. Plaintiffs point out that Mrs. Caldwell-Lloyd suffered from obesity, high blood pressure, and an enlarged heart. However, the pathologist testified that the battery was a precipitating event in the final common pathway. Courts have defined precipitate as "to cause to happen before expected." Debona v. Pawn, 94-430 (La. *620 App. 3d Cir.11/02/94), 649 So.2d 449, writ denied, 94-2878 (La.01/27/95), 650 So.2d 242. There is no evidence in the record to support the premise that Mrs. Caldwell-Lloyd's underlying heart disease suddenly and contemporaneously progressed in its own natural course to the point of a coronary event. The decedent was punched in the face and then immediately began having difficulty breathing and chest pains. She was pronounced dead less than one hour later. The close proximity of the coronary event and the altercation with DiMaggio supports the conclusion that Mrs. Caldwell-Lloyd did not just happen to have a heart attack while performing her job.
Based on the foregoing reasons, I would reverse the decision of the trial court and grant the motion for summary judgment filed by defendant, Shady Lake Nursing Home, Inc.
NOTES
[1] Plaintiffs are Edward E. Lloyd, individually and as the natural tutor of Edward Caldwell, a minor, Cheryl Caldwell, Kimberly Jackson, Eldrick Caldwell, and Roy Caldwell.
[2] Plaintiffs also sued Louisiana Nursing Home Association Malpractice and General Liability Trust and/or Louisiana Nursing Home Association of Professional and General Liability Trust; however, on March 5, 2010, the trial court granted plaintiffs' motion to amend their complaint and dismiss this defendant.
[3] Plaintiffs have not raised any assignment of error regarding the denial of their motion for partial summary judgment.
[4] Prior to the 1997 amendments, Section 1021(8)(e) was designated as Section 1021(7)(e). The content of this section was unchanged, and references in some decisions to the earlier citation should be understood as referencing the current Section 1021(8)(e).
[5] At the time of the suit, the burden for overcoming the non-occupational presumption was by an "overwhelming preponderance" of evidence. The statute was amended by Acts 2001, No. 1189, § 1, eff. June 29, 2001, to change the burden to a "preponderance of evidence."
[6] There are only three types of burdens of proofby a preponderance of the evidence, by clear and convincing evidence, and beyond a reasonable doubt. The word "overwhelming" is superfluous. See Justice Lemmon's concurrence in the first O'Regan case, 737 So.2d at 37.