# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 18-496


**LIBERTY MUTUAL FIRE INS. CO.**

**VERSUS**

**RANDALL J. HEBERT & ASSOCIATES, INC., ET AL.**


**\*\*\*\*\*\*\*\*\*\***

APPEAL FROM THE
SIXTEENTH JUDICIAL DISTRICT COURT
PARISH OF ST. MARTIN, NO. 84573
HONORABLE CURTIS SIGUR, DISTRICT JUDGE

**\*\*\*\*\*\*\*\*\*\***

## JOHN E. CONERY
## JUDGE

**\*\*\*\*\*\*\*\*\*\***

Court composed of Elizabeth A. Pickett, John E. Conery, and Candyce G. Perret, Judges.


**AFFIRMED.**

**Dan Boudreaux**
**Keith R. Giardina Law Offices**
**9100 Bluebonnet Centre Blvd., Suite 300**
**Baton Rouge, Louisiana 70809**
**(225) 293-7272**
**COUNSEL FOR PLAINTIFF/APPELLANT:**
   **Liberty Mutual Fire Ins. Co.**

**Kevin S. Mosley (*Pro Hac Vice*)**
**Grotefeld Hoffman**
**6034 West Courtyard Drive, Suite 200**
**Austin, Texas  78730**
**(737) 226-5320**
**COUNSEL FOR DEFENDANT/APPELLEE:**
   **Hanover Ins. Co.**

**Charles E. Riley, IV**
**Simon, Peragine, Smith & Redfern, LLP**
**1100 Poydras Street, 30th Floor**
**New Orleans, Louisiana 70163**
**(504) 569-2030**
**COUNSEL FOR DEFENDANT/APPELLEE:**
   **Hanover Ins. Co.**

**Allan L. Durand**
**Attorney at Law**
**235 La Rue France**
**Lafayette, Louisiana 70508**
**(337) 237- 8501**
**COUNSEL FOR DEFENDANT/APPELLEE:**
   **St. Martin Economic Development Authority**

**CONERY, Judge.**

Liberty Mutual Fire Insurance Company (Liberty Mutual) appealed, and Hanover Insurance Company (Hanover) filed a brief in support of Liberty Mutual's appeal of the December 4, 2017 judgment of the trial court granting summary judgment in favor of the St. Martin Economic Development Authority (SMEDA), thereby dismissing Liberty Mutual and Hanover's claims for flood damage to the building of their insured, Waukesha Pearce Industries, LLC (WPI). For the following reasons, we affirm.

### FACTS AND PROCEDURAL HISTORY

SMEDA is a Louisiana non-profit corporation created in 1994 to encourage economic growth in St. Martin Parish, Louisiana. In 2003, the St. Martin Parish Government (Parish), not SMEDA, received a grant from the U.S. Economic Development Agency that the Parish used to purchase a 160 acre tract of land to create a light industrial park in St. Martin Parish, later named the Highway 90 Industrial Park (the Park). WPI purchased Lot 21-A in the Park and constructed a building on Petroleum Parkway. On November 6, and 7, 2015, the WPI building located in the Park suffered flood damage, which was covered and paid for by its insurers, Liberty Mutual and Hanover.

Prior to the flood damage to the WPI building, the Parish had acquired a right-of-way and entered into a construction contract in order to construct Petroleum Parkway, as well as other streets in the Park. SMEDA was neither a party to the contract to acquire the right-of-way nor to the construction contract for Petroleum Parkway.

The Parish further contracted for the installation of the water and sewer lines in the Park, which ran parallel to and within twenty-five feet of Petroleum Parkway.

The right-of-way for the water and sewer lines was also owned by the Parish and SMEDA was not a party to that contract either.

Liberty Mutual and Hanover each filed petitions for damages against SMEDA, along with five other entities, alleging that these defendants were responsible for the flooding of the WPI building because "[t]he drainage and elevation system on or surrounding properties were negligently designed, created installed, and/or maintained" by the defendants. Both petitions alleged negligence and *res ipsa loquitur* against all defendants, including SMEDA. A joint motion to transfer and consolidate the two cases was filed and signed by the trial court.

SMEDA filed a motion for summary judgment claiming that based on the pleadings, affidavits and evidence in the record, there is no genuine dispute as to material facts and it is entitled to judgment as a matter of law.[1] SMEDA's motion was ultimately heard by the trial court on November 3, 2017.

SMEDA filed the affidavit of Fred H. Mills, Jr. in support of its motion. Mr. Mills is the President of SMEDA and also serves on its Board of Directors. Mr. Mills has served in both capacities since prior to 2005, and therefore had personal knowledge of the sale of Lot 21-A in the Park to WPI in 2007. SMEDA also filed an affidavit from Ms. Beth Guidry, the duly appointed Executive Director of SMEDA since October 31, 2001. During that time period, Ms. Guidry has served as SMEDA's only employee. The attestations contained in the two affidavits in support of the motion for summary judgment submitted by SMEDA were unopposed by Liberty Mutual and Hanover. Mr. Mills' affidavit provides that, "In

---

[1] The record shows that SMEDA had originally claimed it was entitled to summary judgment based on no genuine issue of fact and it was entitled to dismissal "on the grounds of (1) prescription and (2) no cause of action…." However, a hearing on SMEDA's original motion was continued twice and the latest motion filed by SMEDA properly fixed a hearing on its motion for summary judgment for November 3, 2017. Though awkwardly worded, it is clear from a full reading of the record that a hearing on SMEDA's motion for summary judgment was in fact fixed for hearing on November 3, 2017. No mention was made of a hearing on an exception of prescription or no cause of action.

connection with the installation of the streets as well as the water and sewer lines, neither SMEDA nor anyone acting on behalf of SMEDA performed any work which altered the contours or the surface of Lot 21-A [(later)] purchased by WPI." No dirt work was done by SMEDA on Lot 21-A and any dirt work done on any of the lots located in the Park was conducted by the Parish.

Ms. Guidry attested in her affidavit that SMEDA did not own Lot 21-A or any other lot in the Park developed by the Parish. SMEDA bought the lot from the prior owner on May 18, 2007 and immediately sold Lot 21-A to WPI. Lot 21-A, consisted of 8.915 acres, as evidenced by the "Plat attached to the Act of Sale at Conveyance Book 1470, page 623, Entry No. 400116 of the Conveyance Records of St. Martin Parish."

The above described Act of Sale, which was attached to Mr. Mills' affidavit, provided: "The above-described property is conveyed to the Purchaser 'as-is where is' without any warranties whatsoever as to fitness or condition." There have been no acts of correction or amendments to the documents pertaining to this sale.

After purchasing Lot 21-A in 2007, WPI contracted with N.C. Sturgeon, LP (Sturgeon), a Texas construction company, to build a business facility on its newly acquired property. Sturgeon also contracted on behalf of WPI with an independent engineer, Randall Hebert & Associates (Hebert), to manage various engineering services during the construction of the WPI building.

One of the civil engineering services that Hebert was engaged to provide was **drainage design**. The record on appeal does not contain any evidence that any other entity was involved in providing drainage design services to WPI for Lot 21-A or any surrounding lot.

Finally, both Mr. Mills and Ms. Guidry attested on behalf of SMEDA, and personally, that neither had any "knowledge of any problems with flooding or the drainage of water off of Lot 21-A prior to the sale by SMEDA to WPI."

In opposition to SMEDA's motion for summary judgment, neither Liberty Mutual nor Hanover filed any counter affidavits to those submitted by SMEDA. Instead, the insurance companies submitted SMEDA's financial statements from 2012, 2015, and 2016; a copy of the Act of Sale from SMEDA to WPI; and an excerpt from Sturgeon's corporate representative's deposition, the contractor who constructed WPI's building, in which he asserted that he saw a "plat" showing that the building plans had to be approved by SMEDA.

In a joint opposition to SMEDA's motion for summary judgment, both Liberty Mutual and Hanover clarified that their claim was not one in redhibition, but was instead couched in negligence. The insurer's theory of liability against SMEDA was summarized as follows, "If SMEDA reviewed and approved plans for buildings around the WPI property and those buildings affected the drainage at the WPI property, SMEDA should be held liable for poorly maintaining the drainage at the SMEDA Industrial Park." However, there was nothing submitted in the record about the actual scope of the approval process by SMEDA, or any evidence whatsoever to support that any of the later structures built around the WPI structure caused or contributed to the resulting flood damages.

After granting two continuances, the trial court heard oral argument at a hearing on November 3, 2017 and ruled on SMEDA's motion for summary judgment. In closing arguments, Liberty Mutual argued that the deposition of the corporate representative of Sturgeon, the contractor who constructed the building for WPI, created a genuine issue of fact that precluded a summary judgment in favor of SMEDA. The trial court then questioned the parties about which

4

defendants had been previously released in the litigation. In response, the parties stated that there had been three defendants released from the litigation: Sturgeon, the contractor for the development of that tract; Hebert, the civil engineer hired by WPI, who was responsible for the drainage design; and the City of Broussard. The latter party was released because the Park is located outside the city limits in St. Martin Parish.

The trial court then gave its oral reasons on the record and stated:

Considering what I've listened to and what I've read, especially the affidavits filed by SMEDA that SMEDA basically was a buyer and seller of property, having nothing to do with the actual developing - - developing or manufacturing of these lots and I'm going to grant the Motion for Summary Judgment.

The trial court found that SMEDA was "entitled to judgment as a matter of law," and dismissed "all claims of the Plaintiffs Liberty Mutual Fire Insurance Company and Hanover Insurance Company against SMEDA, whether contained in original or amended pleadings." No request for written reasons was made by either party. A final judgment was signed and dated December 4, 2017, wherein the trial court designated the judgment as a final appealable judgment pursuant to La.Code Civ.P. art. 1915.

Liberty Mutual timely appealed the trial court's December 4, 2017 judgment in favor of SMEDA, and Hanover filed a brief in support of Liberty Mutual's appeal.

### ASSIGNMENT OF ERROR

In the brief submitted by Liberty Mutual, there is a section entitled "Assignments of Error." Liberty Mutual and Hanover both argue that the trial court erred in granting summary judgment and dismissing all their claims against SMEDA, which they claim were based on a negligence theory and not in

5

redhibition, as argued by SMEDA in its memorandum supporting its motion for summary judgment.

Louisiana Code of Civil Procedure Article 862 provides in pertinent part, "[A] final judgment shall grant the relief to which the party in whose favor it is rendered is entitled, even if the party has not demanded such relief in his pleadings and the latter contain no prayer for general and equitable relief." "'Louisiana is a fact pleading state'" as provided in Article 862. *State ex rel. Ieyoub v. Racetrac Petroleum, Inc.*, 01-458, p. 5 (La.App. 3 Cir. 6/20/01), 790 So.2d 673, 678 (quoting *Ellis v. Normal Life of La.*, 93-1009 (La.App. 5 Cir. 5/31/94), 638 So.2d 422, 427). "A plaintiff does not have to set forth every possible theory of recovery, but he must set forth the facts of his claim" *Id.*

The memorandum in support of the motion for summary judgment submitted to the trial court by SMEDA on the theory of redhibition was assumed that the plaintiffs intended to make a claim in redhibition, as the only significant contact that SMEDA had with WPI was the initial sale of the property in 2007. However, the oral arguments and the affidavits submitted by SMEDA also directly addressed the negligence claims of the plaintiffs, as further evidenced by the trial court's oral reasons and judgment.

A review of the November 3, 2017 transcript of the hearing held on SMEDA's motion for summary judgment indicates that the plaintiffs' argued that their claims were based on negligence and not redhibition, and SMEDA answered those arguments. This clarification took place prior to the trial court's ruling granting summary judgment in favor of SMEDA dismissing all claims made in all petitions by Liberty Mutual and Hanover, "whether contained in original or amended pleadings," as supported by La.Code Civ.P. art. 862.

6

Therefore, it is of no moment whether the plaintiffs' claims were made under a claim of redhibition or negligence. The trial court's judgment dismissed all of the plaintiffs' claims against SMEDA. *Wooley v. Lucksinger*, 09-571, p. 78 (La. 4/1/11), 61 So.3d 507, 572. Accordingly, we will review the trial court's ruling dismissing all claims made by the plaintiff Liberty Mutual, the only appellant.

## LAW AND DISCUSSION

### *Standard of Review*

An appellate court reviews a trial court's granting of a motion for summary judgment *de novo*. *Duncan v. U.S.A.A. Ins. Co.*, 06-363 (La. 11/29/06), 950 So.2d 544. This standard of review requires the appellate court to use the same criteria as the trial court in determining if summary judgment is appropriate, which is whether there is a genuine issue of material fact and whether the mover is entitled to judgment as a matter of law. *Id.*

"A fact is 'material' when its existence or nonexistence may be essential to [the] plaintiff's cause of action[.]" *Smith v. Our Lady of the Lake Hosp. Inc.*, 93-2512, p. 27 (La. 7/5/94), 639 So.2d 730, 751. "A genuine issue of material fact is one as to which reasonable persons could disagree; if reasonable persons could reach only one conclusion, there is no need for trial on that issue and summary judgment is appropriate." *Smitko v. Gulf S. Shrimp, Inc.*, 11-2566, p. 8 (La. 7/2/12), 94 So.3d 750, 755.

"[A] motion for summary judgment shall be granted if the motion, memorandum, and supporting documents show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law." La.Code Civ.P. art. 966(A)(3). As provided in La.Code Civ.P. art. 966(D)(1):

> [I]f the mover will not bear the burden of proof at trial on the issue that is before the court on the motion for summary judgment, the mover's burden on the motion does not require him to negate all essential elements of the adverse party's claim, action, or defense, but rather to point out to the court the absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. The burden is on the adverse party to produce factual support sufficient to establish the existence of a genuine issue of material fact or that the mover is not entitled to judgment as a matter of law.

### *SMEDA's Involvement In The Highway 90 Industrial Park*

The affidavits of Mr. Mills, the President and member of the Board of SMEDA, and Ms. Guidry, the Executive Director of SMEDA, submitted in support of the motion for summary judgment on behalf of SMEDA, clearly demonstrate that the only involvement that SMEDA had with WPI was the less than two minute period when SMEDA bought from the Parish and then immediately sold Lot 21-A to WPI for the construction of WPI's facility in the Park. The Act of Sale from SMEDA to WPI, clearly stated, "The above-described property is conveyed to the Purchaser 'as-is where-is' without any warranties whatsoever as to fitness or condition."

In opposition to the well-constructed and comprehensive affidavits submitted by SMEDA, which detail the function of SMEDA and its extremely limited role in this case, Liberty Mutual and Hanover submitted into the record SMEDA's financial statements from 2012, 2015, and 2016, which they argue show that SMEDA continued to sell lots and develop the Park, arguably contributing to the flooding.

As previously discussed, infra, the only evidence in opposition was an excerpt from the deposition of the corporate representative from Sturgeon, the contractor who constructed WPI's building, indicating the contractor saw a plat which said, "All - - all plans had to be approved by them [SMEDA]." Liberty

Mutual and Hanover argue that this statement by a corporate representative from Sturgeon creates a genuine issue of fact. Their argument is that the alleged failure of SMEDA to properly review the plat of WPI's building "could have caused or contributed to the flooding" of the building some eight years later.

The deposition testimony of the Sturgeon corporate representative, however, provides that it was Sturgeon who contracted on behalf of WPI with an independent engineer, Hebert, to manage various engineering services during the construction of the WPI building. Specifically, Hebert was engaged to provide the **drainage design**. The record on appeal does not contain any evidence that any other entity, including SMEDA, was involved in providing drainage design services to WPI for Lot 21-A or any surrounding lot. The affidavits filed by SMEDA stating that SMEDA had nothing to do with either the dirt work or with the actual construction of the streets and drainage for any of the lots in the Park, including Lot 21-A purchased without warranty by WPI, are uncontradicted.

Louisiana Code of Civil Procedure Article 966(D)(1) provides that when the mover, SMEDA, who will not bear the burden at trial, seeks summary judgment, the law "does not require [it] to negate all essential elements of the adverse party's claim, action, or defense, but rather to point out to the court the absence of factual support for one or more elements essential to the adverse party's claim, action, or defense." The burden then shifts to the parties opposing the summary judgment, Liberty Mutual and Hanover, "to produce factual support sufficient to establish the existence of a genuine issue of material fact[.]" La.Code Civ.P. art. 966(D)(1).

Counsel for Liberty Mutual argued at the hearing that there was a question of fact about "what specific services did SMEDA provide or not provide?" Second, "what specific improvements has SMEDA done for the developments?" Finally,

9

the "[T]hird question of disputed fact is what was the drainage system like? All things that SMEDA had some input in."

Counsel for Hanover further argued to the trial court that SMEDA's motion was premature, that discovery was ongoing, and that there was an issue of what the experts would say:

> So it's a little premature to sit here and say that we don't have anything that we're gonna show. We do have in the record from, for instance, Mr. Hebert saying that what he believes is the cause was that the land was below sea level. So we do have some stuff in the record saying what a potential cause would have been.

However, the trial court responded to the issue of prematurity by asking, "Yeah, but what – what does SMEDA have to do with – with the development of the land." Further, SMEDA's motion for summary judgment was filed on July 6, 2017, was continued twice, and finally heard on November 3, 2017. Accordingly, there had been ample time for Liberty Mutual and Hanover to attempt to controvert SMEDA's summary judgment motion.

The bottom line and what the trial court focused on was whether the record evidence showed that, other than the sale of the land to WPI, SMEDA had anything to do with the development of the Park, including the streets, water, sewer, drainage and the subdivision of the property. The affidavits of Mr. Mills and Ms. Guidry addressed each of these issues and clarified that the Parish was responsible for all improvements to the Park. Neither affidavit was contested by the opposing parties, who failed to submit any affidavits in opposition.

After a thorough *de novo* review of the record before us, we affirm the judgment of the trial court in its entirety.

## CONCLUSION

Based on the foregoing, we affirm the trial court's December 4, 2017 judgment in favor of the St. Martin Economic Development Authority dismissing

with prejudice all claims of the plaintiffs, Liberty Mutual Fire Insurance Company and Hanover Insurance Company, against the St. Martin Economic Development Authority, whether contained in original or amended pleadings, with prejudice and at plaintiffs' costs. Costs on appeal are assessed to Liberty Mutual Fire Insurance Company.[2]

**AFFIRMED.**

---

[2] Hanover did not file an appeal in the case before us and hence is not also taxed for appellate costs.